Norton, *Surviving Partner*, v. Bohart, *Appellant.*

### DIVISION TWO.

1. **Money Had and Received:** EQUITY. A petition *held* to state a cause of action at law for money had and received, and not a suit in equity.

2. **Contract:** MISTAKE: REMEDY. The plaintiff purchased from the defendant the assets of a bank, paying $10,250 for the capital stock, a further sum of $1,500 for the furniture and fixtures, and the additional sum of $2,000 for the bank building, which had been paid for out of the capital stock. Plaintiff testified that he was to get the assets of the bank by the purchase of the stock, and that the bank building, having been bought with money of the bank, constituted a part of its assets, but that he paid for the stock, and, by mistake and overlooking the fact that the building was included in the stock, he paid for it a further sum of $2,000. Defendant testified he sold the bank for $10,250, and the building for $2,000 additional, and that he would not have sold his property on the terms plaintiff insists he did. *Held, first,* that, if the contract was as plaintiff testified, and the $2,000 paid for the building was paid under mutual mistake of the parties, plaintiff was entitled to recover it back as money paid by mistake; *second,* but, if the contract was as defendant claimed, plaintiff had no cause of action.

105  615
106  299
105  615
56a  235
105  615
72a  385
105  615
87a  296
105  615
163  572

Norton v. Bohart.

3. ———— : ———— : ————. If, however, each of the parties honestly understood the contract as testified to by them, the plaintiff's remedy was not by an action at law, but by a suit to rescind the contract and place the parties *in statu quo.*

4. ———— : PAROL EVIDENCE. Where the memorandum of a contract does not purport to be a complete expression of the entire contract, parol evidence is admissible to explain and supply its omissions.

5. **Former Judgment, not Res Judicata, When.** A former judgment will not be deemed *res judicata* where it is not a final one.

*Appeal from Caldwell Circuit Court.*—Hon. J. M. DAVIS, Judge.

REVERSED AND REMANDED.

*Thomas J. Porter, William A. Wood* and *Johnson & Wait* for appellant.

(1) If the money sued for was paid in pursuance of the contract set forth in defendant's answer, the plaintiff cannot recover on averments which ignore and contradict the contract. The petition should have set it forth truly, and pleaded such facts as would have entitled plaintiff to recover notwithstanding the contract. *Christy v. Price,* 7 Mo. 430 ; *Fruin v. Railroad,* 89 Mo. 397 ; *Mill Co. v. Brundage,* 25 Mo. App. 268 ; *State to use v. Samuels,* 28 Mo. App. 649 ; *Treadway v. Johnson,* 33 Mo. App. 122. (2) If the money sued for was paid to defendant in pursuance of a contract between the parties, and in exact accordance with its terms, it cannot be recovered on the ground that plaintiffs were mistaken as to the nature or effect of the contract, or the character or value of the property purchased ; for a mistake of one party, relief will not be afforded, so as to subject the other party to obligations or conditions to which he never assented. Any relief will be denied in such case, unless the parties can be placed in their former position. Kerr on Fraud and Mistake, p. 428 ; *Matthews v. Kansas City,* 80 Mo. 231 ; *Fruin v. Railroad,* 89 Mo. 397 ;

*Treadway v. Johnson, supra;* Schouler on Personal Prop., pp. 626–628 ; *Comer v. Grannis,* 75 Ga. 277; *Brown v. Mosher,* 33 N. W. Rep. (Minn.) 38. (3) If a party, through ignorance, forgetfulness, inadvertence or mistake, makes a contract, he has the choice of abiding by it as made, or of asking its rescission on the ground of such ignorance, etc., but he cannot hold the fruits of the contract as made, and enforce different terms against the other party, to which that party never assented. Kerr on Fraud and Mistake, pp. 409–422 ; *Fruin v. Railroad,* 89 Mo. 397 ; *Benson v. Markoe,* 5 Am. St. 816 ; *Sawyer v. Hovey,* 3 Allen, 331. (4) If the parties had agreed upon $11,750 as the price of the property sold, and by mutual mistake the contract had been made to call for $13,750, it would be a case where a court of equity would reform the contract, but only then upon the most conclusive evidence that the sum named was mentioned contrary to the intention of both parties ; "and the mistake must be proved as much to the satisfaction of the court as if admitted." *Ford v. Joyce,* 78 N. Y. 618; *Wemple v. Stewart,* 22 Barb. 158 ; *Frederick v. Henderson,* 94 Mo. 98 ; *Sawyer v. Hovey,* 3 Allen, 331. (5) Unless there was either a mutual mistake or fraud on the part of the defendant (which is neither alleged nor proven ), there can be no relief at law or equity, notwithstanding the plaintiffs were mistaken, if they had the means of discovering the facts and neglected to avail themselves of the opportunity. Pomeroy's Equity, sec. 856; Kerr on Fraud and Mistake, p. 409 ; *Brown v. Fagan,* 71 Mo. 563; *Needles v. Burk,* 84 Mo. 560 ; *Grymes v. Saunders,* 93 U. S. 55. (6) If the defendant received only the amount he contracted for, and understood he was entitled to, he cannot be compelled to refund any part of it, so as to conform the transaction to the understanding of the other party to the contract. He is entitled to keep it all, or to surrender it all, and be restored to his original position. *Jarrett v. Morton,* 44 Mo. 275 ; *Woodward v. Van Hoy,* 45 Mo. 300.

(7) The plaintiff, having declared on the written memorandum mentioned in defendant's answer in his former suit against the defendant as the contract of the parties, and sought to recover $2,000 for a breach of the contract, will not be permitted to deny the contract, ignore its terms and recover on the ground the money sued for was paid by mistake. "A party cannot recover on a statement of facts entirely inconsistent with claims set up by him in a prior suit for the same cause of action." *Walker v. Walker*, 37 La. Ann. 107; *Brue v. Sims*, 34 Mo. 246; *Speck v. Riggin*, 40 Mo. 405–6. (8) Notwithstanding the change in form of action, the decision in 24 Mo. App. 240, must govern the decision of this case as to the contract between the parties, and their rights and liabilities under it. *Adair Co. v. Ormsby*, 75 Mo. 282; *Murphy v. Murphy*, 28 Mo. App. 276; *Bevis v. Railroad*, 30 Mo. App. 564; *Railroad v. Traube*, 59 Mo. 355; *Chouteau v. Gibson*, 76 Mo. 38. (9) As there was no proof of mutual mistake nor of fraud on the part of the defendant, his demurrer to the evidence should have been sustained. Authorities above cited.

*James F. Mister, Anderson & Carmack, S. C. Woodson* and *R. P. C. Wilson* for respondent.

(1) Right to recovery is based upon the view that the transaction in this case involves the doctrine of surprise combined with a mistake of law. Jeremy's Eq. Jurisp., pt. 2, ch. 2, p. 366. The relief is on the ground that the party has been taken unawares; that he acted without due deliberation and under confused and sudden impressions. Where the result of denying the relief will be to give the other party an unconscionable advantage (in the case of a misapprehension or mistake of an established rule of law,) and the fact of such misapprehension is admitted, or proved to the satisfaction of the court, this is sufficient ground for equitable interference. 1 Story's Eq. Jurisp. [10 Ed.]

sec. 138, note 2, 138*e*, 138*f*, 138*g*, 138*h*, 138*i*; also 119, 134; Snell's Principles of Equity, 369, 370; *Irwin v. Wilson*, 12 W. Rep. 873; *Chitwood v. Russell*, 36 Mo. App. 245. (2) When the mistake is of so funda- mental a character that the minds of the parties had never, in fact, met, or where an unconscionable advan- tage has been gained by mere mistake or misapprehen- sion; and there was no gross negligence on the part of the plaintiff, either in falling into the error, or in not sooner claiming redress, and no intervening rights have accrued, and the parties may still be placed *in statu quo*, equity will interfere, in its discretion, in order to prevent intolerable injustice. 1 Story's Eq. Jurisp., sec. 138*i*. (3) Money paid voluntarily under a mistake of fact may be recovered back as money had and received. A contract may be set aside, if made for a consider- ation which is really non-existent, but which both parties mistakenly supposed to exist. Adams on Equity [ 4 Am. Ed.] *188, marg. page. (4) When the surprise is mutual there is, of course, a still stronger ground to interfere, for neither party has intended what has been done. They have misunderstood the effect of their own agreements or acts ; or have presupposed some facts or rights existing, as the basis of their proceed- ings, which in truth did not exist. Snell's Principles of Equity, 369, 370; *Irwin v. Wilson*, 12 W. Rep. 873; *Coal Co. v. Slack*, 7 S. Rep. 300 ; *Cleghorn v. Zumwalt*, 23 Pac. Rep. 294. (5) If the money is paid under the impression of the truth of a fact which is untrue, it may, generally speaking, be recovered back, however care- less the party paying had been in omitting to use due diligence to inquire into the facts. The imputation of negligence would not bar the plaintiff's action. Where the parties acted under a mistake of facts, and both were mutually in error, if, in consequence of such mutual mistake, one party has received the property ( or money) of the other, he must refund, and that with- out reference to vigilance or negligence. *Koontz v.*

*Bank*, 51 Mo. 275; *Fraker v. Little*, 24 Kansas, 598; *Divine v. Edwards*, 87 Ill. 177. (6) And even though it should be conceded that the defendant was innocent in his representations to the plaintiff, he would still not be entitled to retain the money. The question whether he understood the matter as he represented it to be is not involved. But how was the fact? *School Directors v. Boonhorn*, 83 Ill. 17; *Dobson v. Winner*, 26 Mo. App. 329; *Chitwood v. Russell*, 36 Mo. App. 248. (7) But where an account has been stated, and the supposed balance paid, and afterwards an error is discovered on the face of the account (as in the memorandum in this case), such as crediting a single item twice, must the merchant file a bill in equity in order to have such an error corrected? In every such case there is an implied obligation upon both parties, *ex æquo et bono*, to rectify any mistakes, and an action at law will lie to recover the balance paid by reason of such mistake. *Hanson v. Jones*, 20 Mo. App. 598; *Chitwood v. Russell*, 36 Mo. App. 245; *Slayden v. Coal Co.*, 25 Mo. App. 446; *Wright v. McPike*, 70 Mo. 175; *Matthews v. City of Kansas*, 80 Mo. 235.

*Silver & Brown* also for respondent.

(1) The contract for the purchase of the bank property was an oral one, notwithstanding the memorandum read in evidence. Bishop on Contracts [2 Ed.] sec. 168. (2) It was for the jury to determine the terms of the contract, it being an oral one, or at most partly oral and partly written. 1 Thompson on Trials, sec. 1113; *Judge v. Leclare*, 31 Mo. 127. (3) It is well settled in this state that where there is no liability or only a supposed liability under a contract, and money is paid thereunder by mistake, or misapprehension of a fact, it can be recovered back as money had and received. *Ins. Co. v. Walsh*, 18 Mo. 229, and cases

cited ; *Koontz v. Bank*, 51 Mo. 275 ; *Morrow v. Surber*, 97 Mo. 155.   The contract properly construed contained no liability to pay twice for the bank building.   See also *Mowart v. Wright*, 1 Wend. 360 ; *Wheadon v. Olds*, 20 Wend. 174 ; *Kelly v. Solari*, 9 Mees. & Wels. 54.   (4)   The plaintiff is entitled to recover on the ground of a partial or *pro tanto* failure of consideration. The most usual example of recovery of money had and received or failure of consideration is where the purchase price of the goods has been paid, and the goods are not delivered to the vendee.   *Nash v. Towne*, 5 Wallace, 689.   So where A pays B price of certain goods, and B does not deliver all the goods, the purchaser can recover back the excess of price paid as money had and received.   *Devaux v. Connally*, 65 Eng. Com. Law, 640.   Here plaintiff contracted really for only one bank building, but paid for it twice ; hence there was a failure of consideration to the extent of single value.

THOMAS, J.—The petition of plaintiff is as follows : "Plaintiff states that he is the surviving partner of the late firm of Guthrie & Norton, a private banking corporation organized under the laws of the state of Missouri, composed of plaintiff and Addison T. Guthrie, and that said Guthrie departed this life about the twenty-seventh day of July, 1883.   The plaintiff, at the August term, 1883, of the probate court of Platte county, state of Missouri, was regularly qualified as the administrator of the partnership estate under the laws of this state, and as such, and as surviving partner as aforesaid, has said partnership in charge.

"Plaintiff further states that on or about the first day of February, 1883, said Guthrie & Norton made a contract with the defendant, upon the terms and to the effect following, that is to say :

"To buy from defendant all the stock of the Platte County Bank, consisting of two hundred shares

(defendant being then the owner of one hundred and fifty of said shares, and undertaking to acquire the remaining fifty shares by purchase and assignment for the purpose of fulfilling his agreement with Guthrie & Norton); that the consideration for said purchase was $10,250 (being the original amount invested in said bank one year previously, except $250, which it was mutually estimated would have to be paid to the other stockholders than defendant for interest, in order to acquire their stock pursuant to the agreement so made by defendant), it being expressly agreed that no *bonus* was to be paid or received, and to buy furniture, fixtures and stationery, of the said bank, which had been acquired from the earnings of said bank, at a valuation mutually agreed upon of $1,500. It was also agreed by defendant to take up a certain note and secure a certain overdraft.

"Plaintiff states that the contract so made as aforesaid was not formally reduced to writing, nor was it embodied in any complete or consummate memorandum; nor was any writing signed by either of the parties thereto; but the terms were indicated by figures set out in a blotter mutually used in the negotiations; that by mutual mistake, oversight and inadvertence of all parties to said contract, or plaintiff alone, the separate value of the bank building, then occupied by said Platte County Bank, and which had been paid for out of the assets of said bank, and which represented the amount so paid for it instead of the money itself, in the purchase of said stock from defendant, was again and for the second time estimated, as of the further or additional value of $2,000, so that instead of the aggregate of said purchase being $11,750, to-wit: That of $10,250 and that of $1,500 for furniture and fixtures as aforesaid intended by all parties, it was by reason of the mistake, oversight and inadvertence aforesaid, in estimating the value of the building the second time as aforesaid, treated as of the aggregate sum of $13,750;

and so in carrying out the transaction as aforesaid, on what was believed to be in accordance with the actual terms of the contract as aforesaid, but which was in fact in accordance with the terms as erroneously made, by reason of the mistake, oversight and inadvertence aforesaid, which assumed a fact to be true which was false, and which could not have been intended by any of the parties thereto, inasmuch as it estimated the same item twice, the defendant was paid by Guthrie & Norton an amount exceeding, by the sum of $2,000, the amount actually agreed to be paid and mutually intended to be paid and received as aforesaid.

"By reason of all which defendant has had and received to the use of plaintiff, because of the mistake and oversight and inadvertence aforesaid, the sum of $2,000 more than that to which he was entitled according to the terms of the contract actually made between defendant and the said Guthrie & Norton.

"Plaintiff further states that at or about the date of the said contract and transaction aforesaid, and as soon as the mistake was discovered by Guthrie & Norton, they demanded from defendant that the said amount so overpaid, because of said mistake, should be repaid to them by defendant, but defendant refused and still refuses.

" Wherefore, plaintiff asks judgment for the said sum of $2,000, the amount so paid as aforesaid, beyond the amount actually intended to be paid by said Guthrie & Norton and received by defendant, together with interest at the rate of six per cent. per annum, from the date of such overpayment."

"Defendant for answer to plaintiff's petition denies each and every allegation therein contained, not hereinafter admitted or otherwise answered.

"Further answering, defendant admits that plaintiff is surviving partner of the firm of Guthrie & Norton, and that he is duly qualified and acting administrator of the partnership estate of said firm.

"Defendant admits, that on or about the first day of February, 1883, he made a contract with said firm, but denies that then or at any other time he made with said firm any contract as set forth in plaintiff's petition, but defendant states, being the owner of one hundred and fifty shares of the Platte County Bank, a banking institution organized under the laws of this state, with a capital stock of two hundred shares of $100 each, he did on or about the first day of February, 1883, make and enter into a contract with said Guthrie & Norton, the terms and conditions of which were, at the time, reduced to writing, and was in words and figures as follows:

"'Contract between James M. Bohart, A. F. Guthrie and Wm. F. Norton, in regard to the transfer of the Platte County Bank to Guthrie & Norton.

"'*First.* Guthrie & Norton are to pay J. M. Bohart capital stock and interest on same, $10,250.

"'*Second.* J. M. Bohart is to obtain all the stocks in said bank and turn them over to Guthrie & Norton.

"'*Third.* Guthrie & Norton are to take the business of the bank as it stands, the bank building, furniture and fixtures, stationery, etc., at $3,500.

"'*Fourth.* Lathrop city script to be taken by J. M. Bohart.

"'*Fifth.* J. M. Bohart is to square the cashier's account.

"'*Sixth.* J. M. Bohart is to take up or satisfactorily secure the Fielding Burns and C. M. Johnson note and to satisfactorily secure the Davis and Perry overdraft.

"'*Seventh.* This contract is to take effect February 14, 1883.'

"Defendant states that he cannot file said contract with his answer, because the same is attached to the petition as a part thereof in a certain suit of the plaintiff herein against this defendant heretofore tried in the

circuit court of Ray county, Missouri, and there remains as a part of the record in said cause.

"Defendant states that he never at any time made any other contract 'with said Guthrie & Norton in relation to the sale or transfer to them of the Platte County Bank; that he has fully complied with all the terms and conditions of said contract on his part; that in pursuance therewith all the capital stock, the bank building, furniture and all the assets of said bank have been surrendered and delivered to said Guthrie & Norton, and the same was received and retained by them under said contract and in satisfaction thereof as their absolute property, they having paid defendant thereof the amount agreed upon in said contract, and no more."

It will not be necessary to set out the evidence in detail. Suffice it to say, there was evidence introduced by both parties tending to prove their respective theories of the case. The case was tried by the court without a jury, and judgment was rendered against defendant for the sum of $2,600, and he brings the case to this court by appeal.

I. There is some controversy between the parties as to whether this is a suit in equity or an action at law. We think it clearly an action at law, for money had and received. 2 Chitty Con. [11 Am. Ed.] pp. 903, 928-32. The trial court so treated and tried it, and in this no error was committed.

II. On the main issue raised by the pleadings the court declared the law as follows: "If the court finds from the evidence that on or about the first day of February, A. D. 1883, Guthrie & Norton, of whom the plaintiff is the surviving partner and duly qualified administrator of the partnership estate, made a contract with defendant Bohart to the effect following: To buy from the defendant all the stock of the Platte County Bank, consisting of two hundred shares of $100 each, one-half of which was then paid up, and defendant

being then the holder and owner of one hundred and fifty of said shares, and undertaking to acquire the remaining fifty shares by purchase and assignment for the purpose of fulfilling his agreement with said Guthrie & Norton ; and that the consideration for said purchase was $10,250, being the amount originally invested in said bank one year previously, except $250, which it was mutually estimated would have to be paid to the stockholders, other than defendant, for interest thereon for one year at ten per cent. per annum, and that it was mutually agreed that no *bonus* was to be paid or received in the purchase and sale of said stock, and to buy the furniture, fixtures and stationery of the said bank, which had been acquired from the earnings of said bank, at a valuation mutually agreed upon of $1,500 ; and that defendant also agreed to take up a certain note and secure a certain overdraft ; *that in making said agreement, and the data upon which it was based, the parties to said contract, or either of them, by ignorance, improvidence or inadvisedness, overlooked and ignored the fact that the bank building then owned by said bank had been paid for out of the assets of said bank, and it was mutually agreed that a further and additional sum should be paid for said bank building, and that the aggregate amount of $4,000 was thus paid for said bank building when it was mutually intended that the payment therefor should be $2,000 only, which had already been paid in the purchase of the capital stock, and said overpayment of $2,000 was so received and is now held by said defendant,* then the said second or double payment aforesaid of $2,000 as aforesaid is wrongfully held by defendant, and does not belong to defendant, and the plaintiff is entitled to recover the same with interest at the rate of six per cent. per annum from the time of demand and refusal alleged in the petition and shown by the evidence.''

Assuming that the court found the facts as set out in this declaration, was the plaintiff entitled to judgment? The declaration is explicit enough till the main fact in issue was reached, when it becomes confused and exceedingly ambiguous. This part of the declaration we have italicized. Of the facts set out in this part, we can see, of course, that the court found that the parties, or one of them, which one is not stated, through "ignorance, inadvertence and inadvisedness, overlooked and ignored the fact that the bank building then owned by said bank had been paid for out of the assets of the bank." The failure to find which one made the mistake, or whether both were mistaken, would not probably vitiate the instruction; for, if the court found both were mistaken, there was certainly no error, and if the court found one of them only was mistaken it *must* have been the plaintiff. Viewing this language in the light most favorable to plaintiff, we may assume that Guthrie & Norton, at least through ignorance, etc., ignored and overlooked the fact that the bank building had been paid for out of the assets of the bank, but we have no finding of the court that the defendant, also, in the same way and for the same reason, ignored this fact. This part of the declaration assumes the existence of the fact that the building had been paid for out of the assets of the bank ; but, as this fact was proved by both parties, the court had a right to assume its existence in the form it did. But the remainder of the italicized portion of the instruction is not only ambiguous, but contradictory.

It is this, "and it was mutually agreed that a further and additional sum should be paid for said bank building, and that the aggregate amount of $4,000 was thus paid for said bank building, when it was mutually intended that the payment therefor should be $2,000 only, which had already been paid in the purchase of the capital stock, and said overpayment of

$2,000 was so received and is now held by said defendant." We have read and re-read that language to see if we could harmonize its seemingly conflicting statements, but we have been unable to do so. We do not see how parties could *mutually agree that a further and additional sum should be paid for the bank building, aggregating $4,000*, when they *mutually intended that only $2,000 should be paid.*

We are unable to ascertain from the instruction what facts the court found. To take its plain language, however, we would say the court found: *First.* That the parties mutually agreed that a further and additional sum should be paid for the bank building ; *second*, the amount thus paid was $4,000, and, *third*, that the parties mutually intended that $2,000 only should be paid. These findings are inconsistent with each other, and all cannot be true. They either did not *mutually agree* that a further sum should be paid, or they did not *mutually intend* that $2,000 only should be paid. If this instruction stood alone in the record as an index of the theory upon which the trial court determined the case, we might concede that the court found that the parties mutually agreed that the purchase of the stock carried the bank building with it, and that the payment of " a further and additional sum " of $2,000 was paid in cash for that building by mistake, but the defendant asked, and the court refused instructions, which, taken in connection with the one given, show very clearly the theory upon which the court gave judgment for the plaintiff.

Defendant asked, and the court refused to declare the law as follows : " If the court shall believe from all the testimony in the case that the plaintiffs agreed to pay the defendant $10,250 on account of the bank stock, and $3,500 on account of the building, furniture, etc., and that plaintiffs paid said amount in accordance with the terms of the agreement between the parties,

then the finding of the court must be for the defendant; even though the court may believe from all the evidence in the case that the plaintiffs were laboring under a mistake as to the stock of the bank, representing its building, and, even though the court may believe that plaintiffs would not have agreed to pay the sums above specified, if it had not been for the mistake they were laboring under.

If the court had given this instruction and had then found the issues for the plaintiffs, we would be able approximately to determine what facts the court did find, but its refusal of this instruction indicates to our minds that it ignored one fact essential to plaintiff's recovery. The issue between the parties was what the contract was,—not what form it took, but what it was in fact. The plaintiff testified that Guthrie & Norton expected to get the *assets* of the bank by the purchase of the stock, and that the bank building, having been bought with money of the bank, constituted a part of its assets, but that they paid for the stock, and then by mistake paid a further and additional sum of $2,000 for the bank building. The defendant testified that he sold the stock for $10,250, and the bank building for $2,000 additional, and he would not have sold this property on the terms the other parties to the transaction afterwards insisted he had sold it. Here was a well-defined, clean-cut issue of fact, made, not only by the pleadings, but by the evidence; but it is impossible for us to ascertain from the record what disposition the court below made of it. If the contract was as plaintiff claims and swears it was, he is entitled to recover, but, if the contract, on the other hand, was what defendant claims and swears it was, or, if he alone understood it that way, judgment ought to have been rendered for him in *this* action, even though Guthrie & Norton, by mistake, ignored and overlooked the fact that they paid for the bank building twice. If there was a mutual mistake, and plaintiff paid, by virtue thereof,

$2,000, which he ought not to have paid, he is entitled to recover it in this form of action. Chitty Con., *supra; Ins. Co. v. Walsh*, 18 Mo. 229; *Koontz v. Bank*, 51 Mo. 275; *Morrow v. Surber*, 97 Mo. 155; *Mowatt v. Wright*, 1 Wend. 360; *Wheadon v. Olds*, 20 Wend. 174; *Kelley v. Solari*, 9 Mees. & Wells. 54.

This right of recovery, however, is based solely on the contract as it was entered into, in fact. The recovery of this sum, in case it was paid by mistake of both parties, puts the parties precisely where they intended to put, and did put, themselves, by the contract as actually made. This works no wrong upon either party.

But suppose the mistake is unilateral. In this case, suppose plaintiff honestly believed he was to get the bank building by the purchase of the stock by the terms of the contract, and, overlooking this fact through inadvertence, paid an additional sum of $2,000 for the bank building, but that defendant honestly believed he was to get $10,250 for the stock, and, in addition thereto, $2,000 for the bank building, could plaintiff recover in this form of action under the facts in this case? We think not. There are cases in which it has been held, and rightfully held too, that money paid by mistake might be recovered in an action at law, though the mistake was unilateral. But in such cases it will be found that the party, who did not commit the mistake, perpetrated a fraud on the other party, by not divulging the fact as he knew it to exist, and the recovery of the money placed the parties in the position it was intended by both of them they should be placed, and where the very right of the transactions required they should be placed. In such cases the court does not undertake to make a new contract for either party, or to reform the contract to conform to the understanding of one of the parties alone, but, on the contrary, simply puts both where they, in fact, agreed they would stand.

But what is the fact here? The defendant states in his answer, and swears to it on the trial, that the contract

between him and Guthrie & Norton was that they were
to pay him $10,250 for the stock, and $2,000 in addition
thereto for the bank building, and if they had not
agreed to do this he would not have sold the bank at
all.    The court below, by refusing defendant's instruc-
tion, evidently did not regard this theory of importance
in the determination of the issues, provided the other
contracting parties made a mistake and paid $2,000
more than *they* thought they ought to have paid, or
agreed to pay.    This was error.    This was the main
issue in the case, and the court ought to have found
what the contract was, in fact, as understood by *both*
parties.    The plaintiff holds on to the property trans-
ferred to Guthrie & Norton by virtue of this contract,
and if the defendant's version of it be correct, then the
court, by directing him to pay back $2,000, which he
honestly believed he was getting by virtue of the con-
tract, and without the reception of which he would not
have sold the property at all, would be substantially
making *a contract for defendant*, without his consent,
to conform to what the plaintiff understood it to be.    It
requires no argument to prove that the court has no
such power.

   If Guthrie & Norton honestly believed they were,
by the terms of the contract, to get the bank building
by the purchase of the stock, and, through inadvert-
ence, overlooked this act, and by mistake paid $2,000
for the bank building in addition to what was paid for
the stock, and the defendant honestly believed he was
to get $10,250 for the stock, and $2,000 in addition
thereto for the bank building, then plaintiff's only
remedy was to rescind the contract, put the parties *in
statu quo* by returning the property and asking for a
recovery of the whole amount paid.    In such case he
can't hold on to the property, and at the same time
enforce different terms against the other party to which
that party never assented.    This would be making
defendant sell his property to plaintiff for $2,000 less

than he thought he was to get, and $2,000 less than his contract, as he understood it, entitled him to.

The instruction above quoted, asked by defendant and refused by the court, declared the law properly as far as it went. The instructions to fully cover the issue made ought to be framed in the hypothetical form, so as to have the jury find the following facts: *First.* What the contract was in fact. *Second.* If the parties did not understand it alike what its terms were as understood by them respectively.

If the contract was in fact what Guthrie & Norton claimed it was, then the defendant ought to refund the sum of money in dispute. In that case, Guthrie & Norton paid the $2,000 by mistake, and defendant knew at the time that he was getting that sum wrongfully. In other words, Guthrie & Norton made a mistake, and defendant perpetrated a fraud by receiving money to which he knew he was not entitled, and which he knew the other parties were paying through mistake.

If the contract was in fact what defendant claimed it was, of course, plaintiff has no cause of action. Guthrie & Norton had a perfect right to buy the bank on such terms as they could get it. And, again, if the defendant, honestly and in good faith, believed that the contract was what he claimed it was, and Guthrie & Norton, honestly and in good faith, believed it was what they claimed it was, then they, if they were right, had a remedy, but it was not the remedy here pursued. Before the court would hear them in that case, they would have to put, or offer to put, the defendant *in statu quo;* i. e., return, or offer to return, to him the property, and ask for the repayment of the $13,750 paid for it. The court, if it found one party understood the contract one way, and the other party understood it in a different way, could restore the property to the one and the money paid to the other, and put both parties *in statu quo.* This is equity, and common sense as well.

The conclusion we have reached is supported by the following authorities: Kerr on Fraud and Mistake, 409 ; *Bellows v. Stone*, 14 N. H. 175; *Matthews v. Kansas City*, 80 Mo. 231 ; *Irwin v. Wilson*, 12 W. Rep. 873, and cases cited in note.

III.  The memorandum of the agreement, which formed the basis of the contract in this case, we do not regard as a contract itself, but only evidence tending to prove what the terms of the contract were.  The weight it is entitled to is wholly for the triers of the issue of fact.  Both parties, at different times it seems, have recognized and repudiated this memorandum as a complete contract itself and as embodying the terms of the contract as made.  Where the writing does not exhibit on its face, or purport to be, a complete expression of the entire contract between the parties, parol evidence is admissible to explain and supply its omissions. *Rollins v. Claybrook*, 22 Mo. 407 ; *Moss v. Green*, 41 Mo. 389; *Briggs v. Munchon*, 56 Mo. 467 ; 1 Green. Ev., sec. 284a; *Ellis v. Bray*, 79 Mo. 227.

IV.  The plaintiff instituted another suit for the recovery of the money in dispute here, and got judgment for it.  The defendant appealed to the Kansas City court of appeals which reversed the judgment and remanded the cause for new trial.  The plaintiff then took a nonsuit and brought this action, and the defendant set up the judgment of the court of appeals in bar of this action.  The lower court overruled this defense, and we think committed no error in doing so.  The judgment of the court of appeals cannot be regarded as *res adjudicata*, because there was no final judgment in the former suit adjudicating the rights of the parties as presented in this action.

For the error committed by the court below in not properly declaring the law the judgment is reversed, and the cause remanded for new trial in conformity to the views expressed herein.  All of this division concur.