FRED MILLER, Respondent, v. THE MISSOURI FIRE BRICK COMPANY, Appellant.

St. Louis Court of Appeals, May 25, 1909.

1. **APPELLATE PRACTICE: Consistent Theories: Fraud: Mistake.** In an action on account where the defendant set up by way of counterclaim overpayment induced by fraud it cannot contend on appeal that the overpayment was made through mistake.

2. **MISTAKE: Contracts: Unilateral Mistake.** In an action on account, where there was no mutual mistake in the first instance as to the terms of the contract, by the parties, but the defendant was mistaken as to the amount due and overpaid plaintiff, such misapprehension will not support a recovery on defendant's counterclaim on the ground of mistake.

3. ————: **Fraud: Relief: Equity.** In the absence of fraud, relief will be granted on ground of a unilateral mistake only in an action of equity, where the mistaken party offers to put the other party *in statu quo*.

4. ————: ————: **Action at Law.** In cases of unilateral mistake an action at law will lie thereon only where the mistake was induced by actual fraud or misrepresentation.

5. **APPELLATE PRACTICE: VERDICT: Weight of Evidence.** Where a verdict was supported by substantial evidence, the appellate court will not interfere unless it clearly appears that the verdict was the result of passion or prejudice on the part of the jury.

Appeal from the St. Louis City Circuit Court.—*Hon. Jas. E. Withrow*, Judge.

AFFIRMED.

*Jamison & Thomas* for appellant.

Where overpayments are made through honest mis-
take of parties as to facts, excess may be recovered back,
though no fraud exists.    Koonce v. Bank, 51 Mo. 275;
McDonald v. Lynch, 59 Mo. 350; Williams v. Carroll
County, 167 Mo. 9; Harris v. Board of Education, 2
Mo. App. 570; Davis v. Krum, 12 Mo. App. 279; Lyle
v. Shinnebarger, 17 Mo. App. 66; Hanson v. Jones, 20
Mo. App. 595.    Where the verdict of the jury is con-
trary to the evidence and the weight of the evidence, the
court should set aside the verdict and grant a new trial.
Dean v. Fire Association, 65 Mo. App. 209; Kreiss v.
Railroad, 148 Mo. 321; Kreiss v. Railroad, 131 Mo. 533;
Brewing Co. v. Boderman, 12 Mo. App. 573; Choquette
v. Railroad, 152 Mo. 257; Reid v. Piedmont, 58 Mo. 4;
Bank v. Armstrong, 92 Mo. 265; Lockwood v. Atlantic,
47 Mo. 50.

*Robt. S. Harbison* and *Henry Higginbotham* for re-
spondent.

A party will not be permitted to try a cause in the
appellate court upon a theory different from that on
which he tried it in the lower court, and will not be per-
mitted in the appellate court to raise and try a new is-
sue.    Appellant having chosen fraud as the issue upon
which it desired to submit its cause to the jury, and
having based its counterclaim on fraud alone, tried and
submitted the same upon that issue alone, it ought
not now be allowed to shift its position and for the first
time be heard to complain of respondent and the trial
court for not injecting the issue of mistake into the
case.    No such issue as mistake was tendered, joined,
tried or thought of in the justice's court or in the cir-
cuit court.    Land Co. v. Zeitler, 182 Mo. 265; Chinn v.
Naylor, 182 Mo. 594; Deschner v. Railroad, 200 Mo.

332; Mirrielees v. Railroad, 163 Mo. 486; Dunnigan v. Green, 165 Mo. 113; Wolfe v. Supreme Lodge, 160 Mo. 685; Horgan v. Brady, 155 Mo. 668; Mitchell v. Railroad, 102 S. W. 661; Huling v. Flag Stone Co., 87 Mo. App. 355; Kansas City v. Madsen, 93 Mo. App. 143; Heman v. Larkin, 108 Mo. App. 398.   The appellate court cannot be called upon to determine an issue of fact which neither party submitted nor sought to submit to the jury by instruction on the trial of the case in the court below.   Bertrand v. Transit Co., 108 Mo. App. 78; Thompson v. Buchholz, 107 Mo. App. 126.   In determining whether there was any substantial evidence to sustain the verdict, the appellate court will not consider defendant's controverting evidence, but will assume that plaintiff's evidence is true, and will give to it every favorable inference which may be reasonably and fairly drawn from it.   Holloway v. Kansas City, 184 Mo. 29; Veale v. Green, 105 Mo. App. 187; Cunliff v. Hausman, 95 Mo. App. 467; Temple v. Railroad, 83 Mo. App. 64.

NORTONI, J.—This action originated before a justice of the peace.   The suit is on an account to recover for services rendered by plaintiff to the defendant in making retorts under an alleged contract with it, by which the price to be paid therefor was fixed at forty cents per foot.   In its answer, the defendant denies that it contracted to pay plaintiff forty cents per foot for his services, and alleges that instead, it contracted to pay him the same rate as was then being paid by its competitor, the Laclede Fire Brick Company, for the same services, which turned out to be $2.85 per standard retort, or about thirty-two cents per foot.   The answer further pleaded a counterclaim for the amount of $176.15 which defendant alleged had accrued to it against the plaintiff by reason of over-payments to him, induced through the fraudulent representations of the plaintiff to the effect that the Laclede Fire Brick Com-

pany was paying forty cents per foot for like services. Plaintiff recovered both upon his cause of action and on the defendant's counterclaim.      The defendant prosecutes the appeal.

It appears the defendant fire brick company is a manufacturer of brick, tile, retorts, and other earthenware.      As we glean from the record, the retorts referred to are earthenware cylinders about nine feet in length.      Plaintiff, by profession, is a retort maker.      The evidence on his part tended to prove that in the latter part of February, he was employed by defendant to make retorts for it at forty cents per foot.      He states that in a conversation had with the defendant's manager, the manager stated that he desired to charge the retort-maker with the responsibility of the retorts until after they were burned in the kiln and were conveyed therefrom to the storehouse or into the cars.      It appears that unless the retorts are properly moulded, they are likely to crack in the kiln during the process of burning and entail loss while being removed therefrom.      Therefore, imposing responsibility upon the retort-maker during the process of burning and their removal from the kiln, induced better work in the moulding.      Plaintiff states that he replied to defendant's manager that if he should asume the responsibility suggested, he would charge forty cents per foot for his services in making the same. That in reply to this, defendant's manager said he would pay the plaintiff the same amount the Laclede Fire Brick Company were paying for making retorts. To this plaintiff replied that he would charge forty cents per foot for the services and assume the risks suggested, wholly irrespective of what the Laclede Company were paying for retort-making, and that the defendant's manager agreed to this proposition and told him to go to work.      Plaintiff commenced work for the defendant within a few days thereafter and continued making retorts for several months, until the middle of July.      The defendant paid him twice a month for the retorts made

at the rate of forty cents per foot. About the middle of July, defendant's manager learned that the Laclede Company was paying $2.85 each for making retorts. Defendant thereupon refused to pay plaintiff forty cents per foot thereafter, and tendered him payment at the rate of $2.85 per retort for those made during that month. This amount plaintiff declined to accept, quit the service, and demanded payment at forty cents per foot for those made by him during the month of July, prior to the date on which the defendant had tendered at the rate of $2.85 per retort. The defendant's theory is that it did not contract to pay plaintiff forty cents per foot, but on the contrary, agreed only to pay him the amount which the Laclede Company was paying for making retorts, and that that question was left open, to be afterwards ascertained. Defendant's manager said that his time was so occupied during the season, he had neglected to ascertain with certainty what the Laclede Company was paying until about the middle of July, and that the payments theretofore made to plaintiff at forty cents per foot were made to him upon false and fraudulent representations by him to the effect that he had ascertained the fact and that such was the price being paid by the Laclede Fire Brick Company. This suit is for the balance due the plaintiff at forty cents per foot for retorts made by him and not paid for immediately prior to the date the defendant discovered the rate being paid by the Laclede Company and tendered him a settlement at the same rate.

There is no controversy in the case as to the number of feet, nor as to the number of retorts made. The entire controversy pertains to the contract price therefor. That is to say, if the contract was to pay plaintiff forty cents, as he insists it was, then he is entitled to recover the amount he sues for; while on the other hand, if the contract was to pay him at the rate the Laclede Company was paying, that is, $2.85 per retort, then the plaintiff is not entitled to recover, for the rea-

son defendant had overpaid him for retorts already made, sufficient to cover any claim he might have at that rate, and some more. The defendant's counterclaim predicates on its theory of the contract; that is to say, that defendant was to pay plaintiff the same rate the Laclede Company was paying, which turned out to be $2.85 per retort; and that having been induced through the fraudulent representation of plaintiff that the Laclede Company was paying forty cents per foot, it had overpaid him for retorts already made, to the extent of $176.15, which amount it prayed to recover.

The issues touching the matter as to which theory of the case was correct, was submitted to the jury by proper instructions, about which no complaint is made here. The jury found for the plaintiff on his cause of action, and also found for him on the defendant's counterclaim. By so doing, it affirmed that the defendant agreed to pay plaintiff forty cents per foot for making retorts, as claimed by him. Touching the matter of defendant's counterclaim, the court instructed for plaintiff in substance, that the burden is upon the party alleging fraud, to prove it, and unless the defendant had established, by a preponderance of the evidence, that the plaintiff had fraudulently represented to the defendant that the Laclede Company was paying forty cents per foot for making retorts, the verdict should be for the plaintiff on that issue. Defendant insists this was error for the reason it precluded a recovery by it on its counterclaim even though it had overpaid the plaintiff by mistake. It is argued that if one pays another a sum of money by mistake, the law affords him a remedy to recover the same, and that the instruction telling the jury it should find for the plaintiff on the counterclaim, unless the defendant had established to their reasonable satisfaction that plaintiff induced such payments by the fraudulent representation referred to, entirely ignored the principle which permits a recovery of moneys paid by mistake. On this question, it may

be said that there was no question of payment by mistake introduced in the case by the defendant's counterclaim nor by the instructions requested by it. In fact, the suggestion of mistake is no where to be found in the record. It appears for the first time in defendant's brief. Defendant's counterclaim pleads that plaintiff was to perform the services at the same rate being paid by the Laclede Company for like services; that such rate was in fact $2.85 per retort; that the plaintiff had made false and fraudulent representations to the defendant with respect to this matter, to the effect that the Laclede Company was paying forty cents per foot and that, relying upon this false and fraudulent representation, defendant paid him $176.15 in excess of the amount due under his contract of employment, for which amount it asks judgment. In keeping with its counterclaim, the court instructed, at defendant's request, that if the jury found the plaintiff had falsely represented to the defendant that the Laclede Company was paying a price of forty cents per foot for making retorts, "and thereby through such false representation, induced the defendant to advance and pay plaintiff, on account of making such retorts, sums of money equal to forty cents per foot therefor;" and that the Laclede Company was paying only $2.85 per retort, the finding on this issue should be for the defendant on its counterclaim. It therefore appears that instead of relying upon payment by mistake, the defendant relied exclusively upon the fact that the overpayment was made because of plaintiff's false and fraudulent representation. This was pleaded in the counterclaim as having induced, and being the reason for the overpayment. The instructions on the part of defendant submitted the precise question so pleaded to the jury. It is certainly settled in the appellate practice of this State that the case must be reviewed in the appellate court on the same theory on which it is presented at the trial. Parties will not be permitted to bring forward and try one issue in the circuit court

and then, on appeal, present something entirely different and distinct therefrom.    That is to say, parties will not be permitted to predicate reversible error upon a proposition entirely different and distinct from that presented and relied upon at the trial.    To permit such a practice would eliminate the theory of review on appeal entirely.    There would be no review of the questions presented and determined in the trial court, but on the contrary, a new and distinct case would be presented on appeal from that tried in the circuit court. The case must be reviewed on appeal as presented at the trial.    [Benton Land Co. v. Zeitler, 182 Mo. 251; Chinn v. Naylor, 182 Mo. 583; Deschner v. St. Louis & Mer. R. Co., 200 Mo. 310.]    Had the defendant desired to rely upon the doctrine of mistake for a recovery on its counterclaim it should have pleaded the matter, to say the least.    Having relied exclusively upon the theory that plaintiff misrepresented the fact and thereby fraudulently induced the defendant to overpay him, of course its right of recovery depended upon the fact of misrepresentation, and this was certainly the view which defendant's counsel entertained at the trial, for such was the only question they requested the court to submit as a predicate for their right to recover the alleged overpayment.    Even though the case originated in the justice's court, the defendant having filed a formal counterclaim under the statute, in which it set forth the facts of overpayment and the grounds of recovery therefor, the parties are estopped by the pleading from presenting other issues by instructions than those tendered. And, indeed, it would have been error for the court to have submitted to the jury the defendant's right of recovery on the grounds of mistake, when such was not pleaded or relied upon in the counterclaim.    [McClure v. Feldman, 184 Mo. 710.]    The instruction was given, submitted from the plaintiff's standpoint, the issue tendered by defendant in its counterclaim.

Now as to the matter of mistake.    It is true that

where money is paid through mutual mistake, either the law or equity will afford relief to the person making the payment, even though no fraud or mistake on the part of the other appears. The theory of the law in dealing with mutual mistake is that in those cases the minds of the parties did not meet upon a given subject-matter for the reason that both were in error. In such circumstances, relief is granted accordingly. Such are the following cases in point: Koontz v. Central Natl. Bank, 51 Mo. 275; McDonald v. Lynch, 59 Mo. 350; Williams v. Carroll County, 167 Mo. 9; Davis v. Krum, 12 Mo. App. 279; Irwin v. Wilson, 7 Western Rep. 873 and valuable note; 20 Am. and Eng. Ency. Law (2 Ed.), 813. It appears in this case that although there might have been a mutual misunderstanding of the parties touching the contract between them in the first instance, there was no mutual mistake in respect of the overpayment to the defendant. That is to say, if the defendant overpaid plaintiff because of its mistaken idea that forty cents per foot was the amount being paid for like services by the Laclede Company, this was its mistake, and not that of both parties. Plaintiff received payment, understanding that such was the amount due him. In fact, defendant's theory proceeds, not upon the ground that there was mutual mistake of the parties in the contract in the first instance, but rather upon the ground that it, the defendant, had overpaid plaintiff because of its mistake in assuming plaintiff's false representation to be true and acting upon the same to that effect. The question presented, then instead of being one of mutual mistake, pertains rather to the mistake of one party. The mistake in overpaying plaintiff was unilateral in its nature. It is well settled that the mistake of one party, without more, is not sufficient to authorize a recovery on the part of the party making the mistake. [McCormack v. Lynch, 69 Mo. App. 524; Whelen's Appeal, 70

Pa. St. 410; 20 Am. and Eng. Ency. Law (2 Ed.), 813.]
Indeed, in those cases of unilateral mistake, where the
mistake is not induced by the fraud or culpability of the
other party, relief is accorded to the party laboring un-
der the misapprehension of fact only in an equitable ac-
tion to rescind after having placed or offered to place
the other party *in statu quo*.    [Norton v. Bohart, 105
Mo. 615, 630, 631, 632.]    And in such cases of unilat-
eral mistake, the authorities go to the effect that an
action at law may be maintained thereon by the party
in mistake only where it appears the mistake of that
party was induced by the fraud or misconduct amount-
ing to fraud, on the part of the other who did not com-
mit the mistake.    That is, it must appear that the mis-
take was induced by actual misrepresentation, or con-
cealment of material facts by the other party, where
the relations are such that the law imposes the duty
upon the guilty party to reveal the true situation to
the party thus induced to err.    See Matthews v. Kan-
sas City, 80 Mo. 231, 235; Norton v. Bohart, 105 Mo.
615, 630; Bellows v. Stone, 14 N. H. 175; Kerr on Fraud
and Mistake, 489; Benn v. Pritchett, 163 Mo. 560; 20
Am. and Eng. Ency. Law (2 Ed.), 813.    So it is, we
see that where the action is at law and the recovery is
sought on the grounds of mistake of one party only,
the right of recovery rests as well upon fraud as upon
mistake.    The question finally resolves itself, then, to
a recovery in that behalf on the grounds of both fraud
and mistake, or, as said by Mr. Kerr, in speaking of
unilateral mistake: "If the other party to the contract
has caused the mistake, different considerations arise,
according to the circumstances of the case.    If he has
caused the mistake by misrepresentation, intentional
and for the purpose of inducing the contract, it is fraud
and the contract may be avoided on that ground."
[Kerr on Fraud and Mistake, 489.]    It appearing that
the payments in this case were made through the mis-
take of one party alone, relief may be had only in an

action at law upon the mistake being induced by fraud, or conduct equivalent to fraud, on the part of the plaintiff. Therefore, even on the theory of mistake, if properly presented by the pleadings, the defendant would be accorded recovery only upon a finding by the jury that the plaintiff's fraud and misrepresentation induced the overpayment. And this amounts only, as said by Mr. Kerr, to a recovery on the grounds of fraud. Had the matter of defendant's mistake been pleaded in the counterclaim, even then the instruction complained of would have been proper, for it appears the defendant is not entitled to recover for loss entailed by its own mistake unless that mistake was induced by the fraud or other misconduct amounting to fraud, on the part of the plaintiff.

Touching the question of what was the contract between the parties, the defendant presented two witnesses as against the plaintiff's evidence alone. In view of this, an argument is advanced to the effect that we should set aside the verdict for the reason it is against the greater weight of the evidence. Indeed the matter of the credibility of the witnesses and the weight and value to be given their testimony is exclusively for the jury. And where a verdict is supported by substantial evidence, as in this case, the appellate court will not interfere unless it clearly appears that the verdict is the result of passion, prejudice or misconduct on the part of the jurors. In determining whether the matter is supported by substantial evidence, the court will not consider the defendant's evidence to the contrary, but will assume that of the plaintiff to be true, and if it alone constitutes substantial evidence, as in this case, the verdict will not be disturbed. [Holloway v. Kansas City, 184 Mo. 16, 29; Veale v. Green, 105 Mo. App. 182, 1. c. 187.]

The judgment will be affirmed. It is so ordered. *Reynolds, P. J.,* and *Goode, J.,* concur.