**STAHLY CARTAGE COMPANY, a Corporation, Plaintiff-Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Corporation, Defendant-Respondent.**

No. 34090.

St. Louis Court of Appeals, Missouri.

Dec. 28, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied Jan. 18, 1972.

Application to Transfer Denied Feb. 22, 1972.

Holtkamp & Amelung, Robert A. Wulff, St. Louis, for plaintiff-appellant.

Carter, Fitzsimmons & Brinker, Paul E. Fitzsimmons, George L. Fitzsimmons, Fitzsimmons & Fitzsimmons, Clayton, for defendant-respondent.

DOERNER, Commissioner.

Plaintiff appeals from a judgment in an action at law submitted to the court on what was tantamount to an agreed statement of facts. The decisive issue presented is whether an insurer which agreed to pay a claimant the sum of $10,000 as the consideration for a release executed by the claimant may lawfully refuse to pay, upon discovering that it had made a mistake as to the limits of its policy.

In its petition plaintiff alleged that defendant had issued a policy of liability insurance to Raymond Riegel; that on April 26, 1968, Dennis Riegel, while driving an automobile owned by Raymond Riegel, was involved in an accident near Washington, Missouri, with an International tractor owned by plaintiff, which tractor was thereby damaged; that Dennis Riegel was entitled to the benefits of the policy issued by the defendant to Raymond Riegel; that on July 11, 1968, plaintiff and defendant, acting through defendant's agent, Clinton J. Thurston, made an agreement for the settlement of all claims plaintiff had arising out of said accident for the sum of $10,000; that on that day plaintiff executed and delivered to defendant a release, the consideration for which was $10,000, and defendant issued and delivered to plaintiff a draft

in the amount of $10,000; and that at a later date defendant stopped payment on the draft and refused to pay plaintiff the sum of $10,000, although demand therefor was made upon defendant.

No answer or other responsive pleading was filed by defendant. The next entries in the transcript are a "Statement of Facts" filed by defendant, followed by a similar "Statement of Facts" filed by plaintiff. Those, in turn, are followed by a memorandum signed by both parties which reads: " 'By consent, cause submitted upon statements of facts filed with request for Court to make findings of fact and conclusions of law.' * * * "

The gist of the statements of fact is that defendant issued its policy of liability insurance to Raymond B. Riegel, of Washington, Missouri, on June 1, 1965, renewed and in effect until May 14, 1968, which provided an applicable maximum coverage of $5,000; that the accident occurred on April 26, 1968, as pleaded, with extensive damage to plaintiff's tractor in excess of $10,000; that on April 10, 1968, defendant's regional office in Columbia sent a notice of renewal premium to Raymond B. Riegel, in which it advised that the property damage coverage for the period after May 14, 1968, would be increased to $10,000; that that information was programmed into defendant's computer located in Columbia; that the task of defendant of negotiating a settlement with plaintiff was transferred to the Edwardsville claims office of defendant, the site of plaintiff's home office; that Superintendent John Finch of defendant's Edwardsville office wired defendant's regional office for confirmation of the property damage coverage on Riegel's automobile, which information was supplied to him electronically; that because the inquiry had been made within 34 days of the renewal date of the policy, the computer erroneously supplied the information that the property damage coverage that would be in force after May 14, 1968, would be $10,-000, provided the renewal premium was

paid; that Finch thereupon authorized his adjuster, Clinton Thurston, to negotiate a settlement with the plaintiff; that on July 11, 1968, defendant, through Thurston, advised plaintiff that defendant's coverage was limited to $10,000, and that defendant had authorized him to offer that amount to plaintiff in settlement of its cause of action; that plaintiff accepted defendant's offer on that date and executed and delivered its release to defendant, and defendant, through Thurston, concurrently issued and delivered the settlement draft in the amount of $10,000 to plaintiff; and that the defendant later learned of its error as to the limit of its coverage, stopped payment on the draft, and subsequently offered plaintiff $5,000 in settlement, which offer plaintiff refused.

The respective Statements of Fact are silent as to the retention by defendant of plaintiff's release, but during oral argument defendant's counsel conceded that defendant had never offered to return the release to plaintiff and that defendant still retained it. The record does show that on March 27, 1969, prior to the filing of the stipulation for submission, the defendant filed an offer of judgment for $5,000, pursuant to Civil Rule 77.25, V.A.M.R., which the plaintiff refused to accept.

In its conclusions of law the trial court ruled that " * * * The settlement made with plaintiff by the adjuster clearly resulted from a mistake on defendant's part as to the extent of coverage. An adjuster has no power, in the absence of evidence to the contrary, to alter the contract of insurance or waive any of its essential conditions. Also, the adjuster does not have authority to impose liability on the Company for damages not covered by the policy, and, in fact, which are clearly in excess of the Policy. Booker vs. Motors Ins. Corporation, 228 S.W.2d 694. * * * " Presumably taking into account the defendant's offer of settlement, the court entered a judgment for $5,000 in favor of plaintiff

and against defendant, together with all costs up to and including March 27, 1969, and assessed all costs after that date against plaintiff. Plaintiff's appeal followed.

Whatever may ultimately be the correct answer to the decisive question here presented, it is readily apparent that the judgment in favor of plaintiff for $5,000 cannot stand. For the practical effect of it is to permit the insured under the policy as well as the defendant insurer to have their cake and to also eat it. The damages to plaintiff's tractor were in excess of $10,000. Plaintiff's action is one at law, to recover the sum of $10,000, the sum defendant had agreed to pay plaintiff as the consideration for the release it executed. Defendant sought no equitable relief by way of rescission or reformation, and it continues to retain the release executed by plaintiff. Hence if the settlement agreement is valid and binding on defendant, plaintiff is entitled to a judgment for $10,000. If it is void and not binding on defendant then plaintiff is not bound by the release and is entitled to prosecute its cause of action against Dennis Riegel, and perhaps Raymond B. Riegel, for the full amount of plaintiff's damages. In effect, the trial court reformed the release and validated it, but only to the extent of $5,000. The practical result, if the judgment was allowed to stand, would be that plaintiff will have been forced, against its will, to release the insured tort feasor and the defendant insurer upon payment of the $5,000 when its claim for damages is in excess of $10,000. Such a result is neither just nor equitable.

As the foregoing quotation from its conclusion of law indicates, the basis for the trial court's decision was that an adjuster has no power or authority to alter the contract of insurance " * * * in the absence of evidence to the contrary * * *." Defendant advances a similar argument in its brief. In the instant case, however, there was evidence to the contrary. The statements of fact reveal that Superintendent

John Finch, in charge of defendant's Edwardsville claim office, authorized his adjuster, Clinton Thurston, to offer plaintiff the sum of $10,000 in settlement of plaintiff's claim, which offer plaintiff accepted. Thus the adjuster was specifically authorized and empowered by his superior to negotiate precisely the settlement he made, on behalf of the defendant, with the plaintiff. Furthermore, the cases of Booker v. Motors Ins. Co., Mo.App., 228 S.W.2d 694, Farm Bureau Mut. Ins. Co. v. Anderson, Mo.App., 360 S.W.2d 314, and others cited in defendant's brief all involve disputes between an insured and his insurer, both of whom were aware of the terms of the insurance contract. In the instant case the controversy is between one who is not a party to the contract of insurance, and had no knowledge of its terms, and the insurer which was fully aware, or should have been, of the terms of the contract of insurance it had made with the insured. An insured may be required to know the limits of an adjuster's power since he knows, or should know, the terms of the contract, but one who is not a party to the contract ordinarily cannot be expected to be aware of its provisions.

Our Missouri reports are replete with cases in which a claimant, having entered into a settlement of his claim and executed a release, for one reason or another has sought to repudiate the release and bring suit upon his original cause of action. See Sosa v. Velvet Dairy Stores, Inc., Mo.App., 407 S.W.2d 615 and cases cited therein. In many the plaintiff endeavored to avoid the effect of his release by asserting a mistake on his part, as in Kavadas v. St. Louis Southwestern Ry. Co., Mo.App., 263 S.W.2d 736, where an injured employee who was unable to read executed a release for $12.18, one day's pay, on his mistaken belief that it was only a receipt for one day's pay. And see Oakley v. Duerbeck Co., Mo., 366 S.W.2d 430 and Vondera v. Chapman, 352 Mo. 1034, 180 S.W.2d 704. The thrust of those cases is that in the absence of fraud, misrepresentation or other unfair dealing a release is not invalid because of a unilateral mistake. Sosa, supra. In fact, our courts have held that an agreement to settle, fairly made, is a binding contract, and may be enforced by specific performance against a litigant who subsequently refuses to execute a release. Fair Mercantile Co. v. Union-May-Stern Co., 359 Mo. 385, 221 S.W.2d 751; Landau v. St. Louis Public Service Co., Mo.App., 267 S.W.2d 364; Wenneker & Co. v. Frager, Mo.App., 448 S.W.2d 932.

While not, perhaps, as numerous as cases involving a claimant, there are also cases which hold that one who has accepted a release and agreed to pay a sum in consideration of the settlement agreement is likewise obligated to abide by his contract. In the very recent case of Close v. Prudential Insurance Co. of America, Mo.App., 455 S.W.2d 10, the widow-beneficiary of the deceased's policy entered into a settlement agreement with the defendant insurer. The insurer subsequently ascertained that the policy was not in effect at the time of the insured's death, and refused to pay the amount due the widow under the settlement. The court held that the compromise agreement was binding on the insurer and that it was obligated to pay the sum agreed upon. In Weinberg v. Globe Indemnity Co., Mo.App., 355 S.W.2d 341 an insured and his insurer entered into a compromise agreement and the insurer later refused to pay the sum agreed to on the grounds that the loss was not covered under the policy. Plaintiff sued for the amount due it from the insurer on the compromise agreement, and recovered. And see Baker v. Aetna Cas. & Sur. Co., Mo.App., 193 S.W.2d 363; and Curtis v. Indemnity Co. of America, 327 Mo. 350, 37 S.W.2d 616.

A document termed a release is in essence a written contract of compromise and settlement. Foster v. Aetna Life Ins. Co. of Hartford, Conn., 352 Mo. 166, 176 S.W.2d 482. A written contract, fairly entered into, would be no more than a scrap

of paper if it was not binding on both parties according to its terms. Plaintiff has fully performed, in accordance with the agreement. In this action at law defendant predicates its right to avoid its obligation solely on the ground that it entered into the contract because of its mistake. The mistake was purely a unilateral one on its part, not a mutual mistake. The applicable rule in the instant case is that stated in Section 503 of the Restatement of the Law of Contracts: "A mistake of only one party that forms the basis on which he enters into a transaction does not of itself render the transaction voidable; * * *." And in the Missouri pocket supplement to the Restatement, prepared by Professor Williams of Washington University and Dean Eberle of St. Louis University, it is said that "Missouri is in accord with the rule stated in the first clause * * *" of Section 503. See Lugena v. Hanna, Mo., 420 S.W.2d 335, 340; Norton v. Bohart, 105 Mo. 615, 16 S.W. 598, 601; Miller v. Missouri Fire Brick Co., 139 Mo.App. 25, 119 S.W. 976, 979.

In the prayer of its petition plaintiff prayed only for a judgment for $10,000 and its costs, and did not ask for either interest or any general relief. Accordingly, for the reasons stated the judgment is reversed and the cause is remanded with the direction to enter a judgment in favor of plaintiff and against defendant for $10,000, together with its costs.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment reversed with directions.

BRADY, P. J., DOWD, J., and BLOOM, Special Judge, concur.