## KAVADAS

v.

## ST. LOUIS SOUTHWESTERN RY. CO.

No. 28839.

St. Louis Court of Appeals.

Missouri.

Feb. 16, 1954.

Rehearing Denied March 12, 1954.

John S. Marsalek, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for appellant.

Cox, Cox & Cox, Dallas W. Cox, William A. Moffitt, Jr., St. Louis, for respondent.

HOLMAN, Special Judge.

Plaintiff (respondent), William S. Kavadas, instituted this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages for personal injuries. The answer of defendant (appellant) pleaded that plaintiff had executed a valid and binding release of his alleged cause of action. The reply alleged that the plaintiff was induced to sign the release by reason of the false representations of the defendant.

The issues were submitted to a jury and a verdict for plaintiff in the sum of $3,700 resulted. From the ensuing judgment defendant has duly perfected its appeal to this court.

The only point raised by the defendant upon this appeal is that the evidence was insufficient to sustain the allegations of fraud made in the reply and therefore the trial court erred in overruling its motion for a directed verdict.

Plaintiff was born in Greece in 1913, where he attended grade school for six years and high school for two years. He worked in his native country as a farmer, tailor and freight house trucker. Coming to the United States in 1946 his first work was in St. Louis as a tailor and he later worked in his brother's restaurant sometimes taking care of the cash register. He was employed by the defendant as a trucker in its St. Louis freight yard in March, 1951. By this time he had learned to speak English brokenly and could write his name in English very clearly. He testified that he could not read or write English (except for his name) although it would appear that he had some knowledge of figures when used to designate an amount of money.

On July 8, 1951, plaintiff started to work at 11:55 p. m. and sustained an injury shortly thereafter when struck on the shoulder by some falling doors while he was engaged in helping clean a box car. He immediately went to the office of his foreman and reported the incident. Another employee was called in, who, because of his better knowledge of English, was asked to give his version of the occurrence. The foreman filled out a printed form, containing a report of the accident, which plaintiff signed. He was then sent to the hospital where he was examined and instructed to return at 10 a.m. for an X-ray. With the permission of the physician he returned to work at 11:55 p.m. on that day. After working three or four days plaintiff returned to the doctor and complained of pain. Another X-ray was taken and he was advised by the doctor that there was no medicine for his kind of sickness and that he could do nothing for him. No explanation of the meaning of this statement appears in the transcript.

When plaintiff received his pay check on July 24 he saw it was not like the other checks. He inquired of a girl in the office and was told that he had lost one day. He also saw his boss, Mr. Keck, who advised him to see the "payman" (claim agent) when he came to the office. Plaintiff saw Mr. Webb, whom he repeatedly referred to as the "payman", on July 26 and explained why his check was short one day and he thought he told him what the doctor had said. It appears that the plaintiff told Mr. Webb that the doctor said to call him but this particular statement is not exactly clear. The payman telephoned someone and then told plaintiff that he had called the main office and had gotten an order to pay him for the day he had lost. Mr. Webb then prepared a statement of facts relating to the injury, the release in question and a form required by the Railroad Retirement Board, all three of which were signed by plaintiff. He testified that he did not read them because he could not read; that the payman did not read the release to him or tell him that he was signing a release;

that he was told to sign the papers and when he did so he received a check for $12.18 which he cashed at a bank later that day.

It does not appear that plaintiff told Mr. Webb he could not read or asked him to read the papers to him or make any further explanation of the transaction. The check was different in a number of respects from the usual pay check and the following was typed on the face thereof: "in full settlement and satisfaction of claim for all injuries sustained Juy 8, 1951, while employed as trucker at freight house at St. Louis, Mo., inside box car and steel door fell over and injured muscles in left shoulder and bruised left chest." The release signed by plaintiff was in conventional form and recited that the sum paid was in complete settlement and satisfaction of plaintiff's claim.

The claim agent testified for defendant that after he prepared the statement he handed it to plaintiff and asked him to read it. That plaintiff looked at it about as long as it would take to read it and the witness then asked him if it looked all right and plaintiff said yes. He further stated that he explained to Kavadas before he signed the release that it was a general release covering his claim for injuries.

In approaching the solution of the controversy as to the sufficiency of the evidence to make an issue for the jury upon the question of fraud in procuring the release, we are mindful of the rule that we must accept plaintiff's evidence as true and disregard that of the defendant unless it aids the plaintiff and give to plaintiff the benefit of all reasonable inferences that may be drawn from the evidence. Schubert v. St. Louis Public Service Co., Mo.App., 206 S.W.2d 708.

In an effort to avoid the legal effect of the release the plaintiff in his reply alleged that he was induced to sign the release by reason of the false representation of the defendant "that he, plaintiff, was signing a receipt for money that he was then receiving as and for wages, * * *

and when he signed the said paper writing he did not understand its contents or character and thought that it was such receipt and not a release of his rights * * * and that if plaintiff put his signature to said paper writing he did so relying upon said misrepresentations of the defendant." The issue thus raised was submitted to the jury in substantially the same language. We have carefully searched the transcript and find no evidence to prove this allegation. There is not the slightest intimation in plaintiff's testimony that defendant's agent referred to the release as a receipt. Plaintiff contends such proof is not necessary as fraud can be accomplished by acts or conversation designed to produce a false impression as well as by an affirmative representation. This court so held in Scott v. American Mfg. Co., Mo.App., 20 S.W.2d 592. However, the Scott case was based upon a much different state of facts. There the plaintiff, after his discharge from the hospital, went to the employer's office and stated he was in dire need of money. He was paid $75 upon signing a paper which turned out to be a release. It developed that upon many prior occasions he had gone to the office and obtained money, signing a receipt therefor, so that the amount could be deducted from subsequent pay checks. Under these circumstances there was certainly a duty upon the employer to advise the employee, who could not read, that he was signing a release instead of the usual receipt. The evidence in the case at bar does not disclose any act or conduct on the part of defendant's agent that was designed to produce a false impression.

█ Furthermore, if plaintiff intended to rely upon this theory of fraud he should have pleaded it. In Meriwether v. Lumbard, Mo.App., 246 S.W.2d 363, this court held that proof of fraud by concealment would not support an allegation of fraud by false representation. A more general statement of the fundamental rule appears in McCauley v. Smith, Mo.App., 146 S.W.2d 639, 643, wherein it is said, "Plaintiffs, having alleged that defendant was guilty of certain and definite misrepresentations, it

was their duty to prove, substantially, those allegations, and they can recover upon none other."

As we have already indicated it is our view that the evidence was not sufficient to make an issue for the jury upon the question of fraud in procuring the release. This conclusion is strongly supported by the cases of Poe v. Illinois Cent. R. Co., 339 Mo. 1025, 99 S.W.2d 82, and Brennecke v. Ganahl Lumber Co., 329 Mo. 341, 44 S.W.2d 627. In each of these cases the judgment for plaintiff was reversed under facts and circumstances which we think were much more favorable to the plaintiff than was disclosed by the evidence in the case at bar. See also, Alford v. Wabash Ry. Co., 229 Mo.App. 102, 73 S.W.2d 277; Higgins v. American Car Co., 324 Mo. 189, 22 S.W.2d 1043, and Yerxa, Andrews & Thurston, Inc., v. Viviano, Mo., 44 S.W.2d 98.

Plaintiff has cited a number of cases including Prince v. Kansas City Southern Ry. Co., 360 Mo. 580, 229 S.W.2d 568; Schubert v. St. Louis Public Service Co., 358 Mo. 303, 214 S.W.2d 420; Nelson v. Kansas City Public Service Co., Mo.App., 30 S.W.2d 1044; State ex rel. Brown v. Trimble, 324 Mo. 353, 23 S.W.2d 162; Gimmarro v. Kansas City, 342 Mo. 428, 116 S.W.2d 11; and Houghtaling v. Banfield, Mo.App., 8 S.W.2d 1023. We do not deem it desirable to extend this opinion by a review and discussion of these cases but consider it sufficient to point out that each of them may be readily distinguished from the instant case upon the factual situation involved.

██ There is some evidence in the record to indicate that plaintiff sustained substantial injuries and we must therefore confess that we are reluctant to hold that he is barred from recovery because he signed a release upon receipt of $12.18. However, this court cannot relieve the plaintiff of the consequences of his bargain without a valid legal reason for doing so. Mere inadequacy of consideration alone is not enough. Vondera v. Chapman, 352 Mo. 1034, 180 S.W.2d 704. To hold otherwise would establish a precedent which would make it

difficult to settle controversies and would be contrary to the established policy of the law to encourage peaceful settlements. In this connection it might also be noted that at the time of this settlement it did not appear that plaintiff had sustained any disabling injuries and since plaintiff had only lost one day's pay and defendant had furnished the medical services, a settlement based upon the payment of the wages lost would not, at the time, have appeared grossly inadequate or unreasonable.

For the reasons indicated it is our view that the trial court should have directed a verdict for the defendant and therefore the judgment should be reversed. It is so ordered.

ANDERSON, P. J., and BENNICK, J., concur.