Betty Lee CONLEY, Appellant,

v.

Jerry FUHRMAN, Respondent.

No. 48828.

Supreme Court of Missouri,

Division No. 1.

March 12, 1962.

Motion for Rehearing or to Transfer to Court en Banc Denied April 9, 1962.

Robert E. Coleberd, Arthur R. Kincaid, Hale, Coleberd, Kincaid & Waters, Liberty, for appellant.

Sevier & Turnage, Robert F. Sevier, William E. Turnage, Liberty, for respondent.

HOLMAN, Commissioner.

In this action plaintiff sought to recover damages in the sum of $25,000 for personal injuries alleged to have been sustained as a result of defendant's negligence. The verdict and judgment were in favor of defendant and plaintiff has appealed.

Defendant in his answer set up three defenses. The first two were a denial of plaintiff's allegations and a plea of contributory negligence. The third was based on the alleged fact that on February 12, 1959, plaintiff executed an agreement whereby, for a valuable consideration, she released defendant from any and all claims and liabilities to plaintiff. In her reply plaintiff alleged that the said release was obtained without consideration and through the false representation of an agent of defendant's liability insurance carrier. Upon motion of defendant the court ordered a separate trial of the issue relating to the fraudulent procurement of the release. At the conclusion of that trial the jury returned a verdict reciting "that the release is valid and binding on plaintiff." The court thereupon entered a judgment to the effect that the release was valid and that "plaintiff recover nothing from the defendant on her petition for damages." Although the trial related only to the issue concerning the validity of the release, the effect of the verdict was to deny plaintiff a recovery upon her claim for $25,000, as indicated by the judgment, and hence we have jurisdiction of the appeal by reason of the amount in dispute. Section 477.040 RSMo 1959, V.A.M.S.; Crouch v. Tourtelot, Mo.Sup., 350 S.W.2d 799[3]; Jenkins v. Jenkins, Mo.Sup., 251 S.W.2d 243[2].

At about 7 a. m. on February 9, 1959, plaintiff was involved in a five-car collision of automobiles on Highway No. 69. According to her testimony the two cars ahead of her stopped because of traffic. She was able to stop her car and the car immediately behind her stopped, but the fifth car, driven by defendant, struck car No. 4 with enough force to cause it to collide with the rear of plaintiff's car and, in turn, pushed her car into the car ahead and it was caused to strike car No. 1. Plaintiff and her husband owned the car she was driving and they carried liability and $50 deductible collision insurance with Farm Bureau Mutual Insurance Company. It later developed that two of the other cars involved in the collision heretofore described, including defendant's, were insured by Farm Bureau. Although damaged to the extent of $293.96 (the cost of repair) plaintiff's car was "driveable" and she proceeded on to her work. At about 4 p. m. she called the Farm Bureau office in Liberty and reported the collision to Mrs. Pauline Thomas. She was told by Mrs. Thomas to come to the office in a day or so and they would see about getting her car fixed.

Plaintiff went to the Farm Bureau office at about 5 p. m. on February 12, 1959 where she met (apparently by appointment) Mr. W. H. Brooks, an adjuster for Farm Bureau Mutual. The office secretary, Mrs. Thomas, was also present. Plaintiff testified that they talked about the collision and Mrs. Thomas said they would fill out some forms and would "get my car fixed." She asked if anyone was hurt and "I said, 'No, I thought mine was nerves but my head was awfully heavy'"; that Mr. Brooks then said that the car would have to be fixed and they prepared the papers and "wanted me to sign them and I asked them if it was any kind of a release and they said, no, it was just to get my car fixed and * * * Mr. Brooks laid the paper on the desk; he never turned loose of it and he told me to sign my name and beings the car and the policy was in both names, I could sign my husband's. I signed both names and then he pulled the paper back"; that after the instrument was signed "they gave me a check for $50; I took it to the Shepherd Motor Company and they held it until they fixed my car."

Upon cross-examination plaintiff testified that when she first called Mrs. Thomas she told her she was "pretty well shook up" but as far as she knew she was not hurt; that when they "fixed the paper" (release) Mr. Brooks "asked me if I would sign it and I asked him if it was a release and he said, 'It's to get your car fixed' "; that she did not read the release; that no one kept her from reading it; that Mr. Brooks did not make any effort to cover it up; "he handed it over the desk and I signed it and he pulled it back"; that in discussing damages she told them she hadn't yet obtained an estimate of the car damage but whatever that amount was she would only have to pay the first $50 and "the check they gave me was to pay that item"; that she applied the check on the car damages because "that was what it was given to me for"; that she was 40 years old, had completed eight grades of school and could read and write; that since she did not think

she had been hurt it appeared the only damages at that time was to the car and Mr. Brooks "handed me the $50 check and told me to get my car fixed and they would pay the rest of it"; that "the papers I signed was to get my car fixed and I did not know it was to be a release"; that she had known Mrs. Thomas for ten or twelve years but had not met Mr. Brooks until February 12.

Plaintiff offered to prove that she had been injured in the collision in question but did not learn of the injuries until shortly after the release had been signed, and that on February 16, 1959, she reported her injuries to the Farm Bureau Insurance Company, but the court sustained an objection to that offer on the ground that the proof was immaterial. The release and two checks were admitted in evidence. The release provided that in consideration of the $50 the Conleys released Jerry W. Fuhrman for "all known and unknown personal injuries and property damge resulting from" the accident heretofore described. The $50 check heretofore mentioned had on the face thereof, "Kind of Loss, P.D." Both Mr. and Mrs. Conley endorsed that check before it was delivered to the Shepherd Motor Company. Another check was issued on March 10, payable to Shepherd Motor Company in the amount of $243.96 upon the face of which appeared, "Kind of Loss, Coll. 50."

On the part of the defendant, William H. Brooks testified that he had been employed by Farm Bureau Mutual as an adjuster from 1957 to October 1, 1959, and is now employed in the same capacity with Western Adjustment Company. He testified that he met plaintiff on February 12 and spent about 45 minutes discussing the accident; that his company carried the insurance on cars Nos. 1, 3, and 5 in the collision and he therefore told plaintiff that he was interested in settling any claim she had against Mr. Fuhrman, driver of car No. 5; that it was then determined that her only expense would be $50 and she agreed to accept $50 and to release defendant; that Mrs. Thomas filled out a release and

he explained to her that it was a release of her claims and put it in front of her, handed her his pen, and he then left the room for a few minutes; that when he returned the release had the names of Mr. and Mrs. Conley signed thereto; that plaintiff had stated in the conversation that there were no injuries. On cross-examination the witness stated that the letters "P.D." on the face of the $50 check means "property damage" which indicated that plaintiff had been paid for property damage.

Mrs. Pauline Thomas testified that she was employed by the Clay County Farm Bureau which furnishes an office and a secretary for use of the Farm Bureau Mutual Insurance Company; that she had known Mrs. Conley many years and had known Mr. Conley all of her life; that when plaintiff called on February 9 and reported the accident she made an appointment for plaintiff to come in the following Thursday afternoon and told her that the staff adjuster would be there at that time; that when plaintiff came to the office Mr. Brooks was present. They discussed the collision, and in discussing damages plaintiff said she had not suffered any personal injuries—only property damage to the car, and she and Mr. Brooks accordingly agreed on the sum of $50 as compensation for her loss; that she filled in the blanks on the release and Mr. Brooks handed it to plaintiff; that plaintiff looked at it for a few minutes and then signed the release; that she had mentioned to plaintiff that it was necessary to have her husband's name on the release and plaintiff said she could sign for him and she accordingly did so.

On cross-examination Mrs. Thomas stated that it was her duty to prepare accident reports for policyholders of the insurance company and she usually prepared several each day and would then contact the adjuster; that in handling collision claims she would have the policyholder sign an "authorization repair order" but that releases were signed by claimants who were not insured by Farm Bureau Mutual against persons who were so insured; that the only

claim plaintiff made was for the car damage and the $50 was paid to her for car damage, plus the balance payable under her collision policy; that in this instance plaintiff had to sign a release because, although she was a policyholder, she was making an adverse claim against another policyholder.

Plaintiff filed an after-trial motion in which she alleged that the court should set aside the verdict and judgment for defendant and enter judgment for plaintiff. Her first point on appeal is that the trial court erred in overruling that motion. Her theory in support of that contention is that the agents for defendant's insurer concede that the $50 was paid for the damage to the car and therefore there was no consideration for that part of the release which related to personal injuries.

We do not agree with plaintiff's contention. In the first place it should be noted that where, as here, the execution of the release is admitted, plaintiff had the burden of proving the release invalid. Dixon v. Business Men's Assurance Co. of America, 365 Mo. 580, 285 S.W.2d 619. In that situation a verdict should not have been directed for plaintiff unless the testimony of the agents of defendant's insurer conclusively showed the invalidity of the release. It did not so show. Plaintiff's contention undoubtedly arises from the fact that the amount of the payment for the instant release, i. e., $50, was arrived at on the basis of the amount of plaintiff's property damage. However, that fact does not indicate that defendant's liability insurer would pay the full amount of plaintiff's property damage unless it could obtain, as an additional consideration, a release of all claims of plaintiff and her husband against defendant. That such was the intention of Mr. Brooks clearly appears from his testimony as follows: "I asked her what her expense would be, outside cost, since she had a contract with our company for her own vehicle and it was determined through conversation that the only outside expense would be approximately fifty dollars. I told Mrs. Conley that we desired a

release or a contract on behalf of Mr. Fuhrman for any liability that he might be responsible for and asked, would she accept the fifty dollars and release Mr. Fuhrman. * * * I told her, that for her to receive payment, under Mr. Fuhrman's contract, that our duty was to release Mr. Fuhrman and that for her to receive any outside claim that it would be necessary that she sign a release or a contract thereby releasing Mr. Fuhrman." It may be inferred from the quoted testimony that the insurance company would not have settled plaintiff's claim for property damage unless it could obtain a release of all claims the Conleys might have against defendant Fuhrman. The reason would appear to be that unless such a release was obtained the insurer could not close its file but would have to be prepared to meet any other claims that might thereafter be presented by the Conleys during the limitation period. As indicated, we rule that the trial court did not err in overruling plaintiff's motion for judgment.

■ On the other hand, defendant has briefed the contention that plaintiff did not make a submissible case on the issue of the invalidity of the release and therefore his motion for a directed verdict, filed at the close of all the evidence, should have been sustained. That contention is based upon the alleged negligence of plaintiff in failing to protect her own rights by reading the release. In determining that question we will view the evidence in the light most favorable to plaintiff.

Plaintiff's testimony indicates quite clearly that she did not understand that she was settling any claim except the damage to her car and that there was no mental agreement on her part to settle any personal injury claim. The provisions of the release are to the effect that she was settling all claims against defendant, including "known and unknown personal injuries." In considering the question here presented it should be noted that defendant does not question the sufficiency of plaintiff's evidence in regard to the fraudulent representations of

Brooks, agent for defendant's insurer. His claim of non-submissibility is based upon the contention that plaintiff was guilty of such negligence in signing the release without reading it that she could not thereafter claim that she was induced to sign it by the fraud of Mr. Brooks.

"It is unquestionably the general rule that one who signs a written contract without knowledge of its provisions, where the means of information are at hand and easily accessible, is, in the absence of fraud or mistake, bound thereby notwithstanding. * * * [T]he instant case falls within the exception. The question here primarily is not whether plaintiff was negligent, but whether through defendant's fraudulent conduct and representations she was led to sign without further investigation an instrument she did not intend to execute." Rau v. Robertson, Mo.Sup., 260 S.W. 751, 755. In Higgins v. American Car Co., 324 Mo. 189, 22 S.W.2d 1043, a release signed by plaintiff was held to bar recovery as a matter of law upon the ground of plaintiff's negligence. The court in discussing the facts, however, observed that everything about the transaction tended to put him on his guard as to what he was signing. Poe v. Illinois Cent. R. Co., 339 Mo. 1025, 99 S.W.2d 82, contains an analysis of many of the cases in which the question before us has been considered. Some of the authorities seem to indicate that the question is whether, under the particular facts, the releasor's failure to obtain knowledge of the contents of the release was excusable. 45 Am.Jur., Release, § 18, p. 684. In Poe, supra, it is said that "An analysis of the cases reveals that they turn on the nature of the transaction involved, the representations made by the representor, the relation existing between the parties—whether one of trust, or confidence, or friendship, or close acquaintance, or that of strangers dealing at arm's length—or the trick or artifice, if any, employed." 99 S.W.2d 88.

■ We have concluded that, under the facts and circumstances of this case, plain-

tiff's failure to read the release was not such negligence that would, as a matter of law, preclude her from asserting that she was induced by fraud to execute the instrument. The favorable evidence indicates to us that every circumstance surrounding the instant meeting would tend to lull plaintiff into a sense of security and cause her to reasonably believe that it was unnecessary for her to read the paper presented to her. In arriving at that conclusion we have considered the following facts and circumstances: (1) Plaintiff did not go to the office of the insurance company to settle her claim against defendant and hence had made no preparation to undertake such a settlement; (2) she went to the office of her own insurer in order to make a claim under the collision coverage of her policy and without knowledge that her insurer was also the liability insurer for the driver whose negligence she considered caused the collision; (3) she had known Mrs. Thomas for years and understood that she would fill out some forms so that she could get her car fixed; (4) plaintiff did not think she had been injured and so advised Mrs. Thomas and Mr. Brooks; (5) the only claim made by her was for damage to her car and no other claim was discussed at the conference; (6) her collision policy covered all of the damage to her car except $50 and hence when Brooks, as defendant's insurer, offered her that amount so that she could get her car fixed, plaintiff was receiving the maximum amount she could possibly recover for property damages, which was the only item then being considered; (7) the check given plaintiff upon signing the release had on its face, "Kind of Loss—P. D." which Mr. Brooks stated showed that the payment was for property damage; (8) the amount involved was comparatively small; and (9) the fact that the insurer's agents suggested or, at least, knowingly permitted plaintiff to sign her husband's name to the release would indicate the absence of the arm's-length features that usually accompany such a transaction.

The fact that plaintiff thought she was settling for property damage only is corroborated by her action in immediately reporting her physical injuries to the insurance company as soon as such were discovered four days later. For the reasons heretofore stated, we rule that the issue as to the validity of the release was properly submitted to the jury.

Plaintiff contends that the judgment should be reversed and cause remanded for a new trial because of the prejudicial error of the court in giving Instruction No. 2 at the request of defendant. It reads as follows: "The court instructs the jury that it is admitted in this case that the plaintiff signed the release as identified in evidence, *that at the time of signing same she could read and write, that it was open and available for her to read, that no one kept her from reading it and that no one told her she had to sign it before she did sign it and that she did not read the same,* and it is further admitted that she and her husband received the sum of Fifty Dollars ($50) as described in evidence in this case, therefore, you are instructed that if you find and believe from the evidence that Mr. Brooks and Mrs. Thomas did not make such representations as described in Instruction No. 1, if so, and if you further find that when plaintiff signed said release she failed to exercise reasonable care for the protection of her own interests and was not induced to refrain from reading said release and was not induced to refrain from making such investigation of the release as she would ordinarily make to protect her own interests, then your verdict should be that the release is valid and binding on plaintiff." (Italics ours.)

Plaintiff says the instruction is erroneous because (1) it states that certain facts were admitted which, as a matter of fact, were not admitted, and (2) it is argumentative in that it singles out and emphasizes fragments of the evidence and, under the guise of "admissions," comments upon those portions of the evidence.

We are clearly of the opinion that the instruction was prejudicially erroneous. It will be noted that it purported to submit the issues as to whether plaintiff, when she signed the release, "failed to exercise reasonable care for the protection of her own interests and was not induced to refrain from reading said release and was not induced to refrain from making such investigation of the release as she would ordinarily make to protect her own interests." It is apparent that defendant, in drafting the instruction, has singled out the various parts of plaintiff's testimony which would appear to be favorable to defendant on the issues thereafter submitted, and has assembled those portions of her testimony in an argumentative, repetitious fashion, in the introductory part of the instruction, under the designation of admitted facts. In other words, the italicized portion of the instruction constitutes a very effective preliminary argument as to why the jury, in the light of the evidence so commented upon, should find the issues thereafter submitted in favor of defendant.

■■ The fact that plaintiff may have testified to those or similar facts does not warrant the use of same, under the guise of admitted facts, in the emphatic, repetitious, and argumentative fashion as set out in that instruction. Furthermore, an instruction should never state that a fact is admitted unless it has been unquestionably conceded by the party or parties. Some of the admissions stated in this instruction do not come in that category. For example, while plaintiff testified that Mr. Brooks did not keep her from reading the release, she nevertheless qualified that statement by adding that "he never turned loose of it though. He handed it over the desk and I signed it and he pulled it back." The instruction also states as admitted that "no one told her she had to sign it before she did sign it." The basis of that admission was the testimony of plaintiff on cross-examination as follows: "Q. You mean he handed it over as I'm doing now and said, 'You'll have to sign at those places marked with an "X" '? A. No, no, he didn't tell me I had to. He asked me to sign them." The fact that plaintiff testified that Mr. Brooks asked her to sign the release would seem to destroy the so-called admission that he didn't tell her she had to sign it. In discussing certain defects in the instruction we do not mean to indicate that we approve it in other respects. It should be carefully redrafted in the event it is offered again at another trial.

For the error in giving Instruction No. 2 the judgment is reversed and cause remanded for a new trial.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.