Marilyn BOGUS and Melvin Bogus, Her Husband, Individually, Respondents,

v.

Rose BIRENBAUM, Appellant.

No. 49869.

Supreme Court of Missouri,

Division No. 2.

Jan. 13, 1964.

Rehearing Denied Feb. 10, 1964.

Burton H. Shostak, Robert E. Keaney, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for appellant.

Jack J. Schramm, Schramm & Schramm, Clayton, for respondents.

STORCKMAN, Judge.

This is an appeal from a decree in equity setting aside a written release of liability for personal injuries and property damage arising out of a collision of automobiles.

The plaintiffs, husband and wife, filed suit jointly for damages. One of the defenses pleaded in the answer was a written release executed by the plaintiffs. In a special reply the plaintiffs alleged that the release was executed as the result of a mutual mistake of fact. On motion of the defendant and with plaintiffs' consent, the issue as to the validity of the release was separately tried by the court in equity. The decree was deemed a final judgment for purposes of appeal in accordance with Civil Rule 82.06, V.A.M.R. and the defendant appealed.

The automobile collision occurred on the parking lot of an A & P Food Store in St. Louis County as Mrs. Bogus, driving her husband's car, was entering the lot and the defendant was backing her automobile from a parking space preparatory to leaving. The plaintiff wife pleaded both specific and humanitarian negligence and prayed for damages in the sum of $15,000. Her alleged injuries included a loss of pregnancy. The husband in the same action sought $3,608.81 for loss of consortium and for expenses including repairs to his automobile. The defendant's answer admitted that the automobiles "came into slight contact" at the time and place in question, denied all other allegations of plaintiffs' petition, alleged contributory negligence on the part of the plaintiff wife, and pleaded the release.

The plaintiffs, in their special reply to the defense of release, admitted they signed the paper purporting to be a release and delivered it to the agent of the defendant's insurer and further asserted that $66.86, the amount of the settlement, was the estimated cost of repairing the husband's automobile, and that a draft in that amount received by the plaintiffs in the mail was not cashed and was tendered back to the defendant's insurer which refused to accept its return. The alleged grounds for invalidating the release were stated in the reply as follows: "* * * that said purported release was signed by reason of the fact that there was a mutual mistake of fact upon the part of Plaintiffs and the aforesaid agent of the insurance company for the Defendant with respect to the nature and extent of the injuries suffered by Plaintiff Marilyn Bogus; that the aforesaid agent and servant of the insurance company of Defendant mistakenly believed either that Plaintiff Marilyn Bogus was not injured at all, or that her injuries received in the accident were inconsequential and of a minor nature; that both Plaintiffs likewise did not know the nature and extent of the injuries of Plaintiff Marilyn Bogus and the degree of permanence of said injuries that in reality existed at the time of the execution of said purported release; and that Plaintiffs first learned of the nature and extent of said injuries which existed at the time of the execution of said purported release only after said purported release was signed by them; that Plaintiffs would not have signed the said purported release if they had known the true nature and extent of the injuries suffered by Plaintiff Marilyn Bogus; that for the foregoing reasons the said purported release should be declared null and void and held of no effect."

The defendant's contention on appeal is that the evidence was wholly insufficient to establish a mutual mistake in equity because, if there was a mistake, it was not mutual but unilateral and the injuries relied on by the plaintiffs were not shown to have a causal connection with the accident. In general the plaintiffs assert that the parties did not intend to settle for unknown personal injuries but for property damages only; that it is immaterial that the defendant's agent acquired all his information with respect to injuries and damage from the plaintiffs; that it was not necessary to prove when the loss of pregnancy occurred or, in this trial, that it was caused by the accident.

The release, in evidence as defendant's exhibit A, recited receipt of the consideration of $66.86 and stated that Mr. and Mrs. Bogus released the defendant and her husband "of and from any and all claims, demands, rights, and causes of action, of whatsoever kind or nature, arising from or

by reason of any and all known and unknown, foreseen, and unforeseen, bodily and personal injuries, loss and damage to property, and the consequences thereof, resulting, and to result, from auto collision which happened on or about the 16th day of Sept, 1960 at or near A & P Parking Lot on Olive Street Road." The release also contained the stipulation that: "It is further understood and agreed that this settlement is the compromise of doubtful and disputed claims, and that the payments are not to be construed as an admission of liability on the part of Carl Birenbaum and Rose Birenbaum by whom liability is expressly denied." Mr. Bogus admitted that he read the release before signing it. Mrs. Bogus could not recall reading the release but admitted signing it. The most unusual feature of this case is that all contacts between the parties were by telephone and mail.

Mrs. Bogus testified her car was hit while she was sounding her horn to alert the driver of the automobile which was backing out of a parking space. The rear of the defendant's automobile struck the front right section of the Bogus car and Mrs. Bogus was jarred against the steering wheel. She felt a slight pain in her chest and lower part of her stomach at the time it happened but the pain was not continuing. Mr. Bogus was called and went to the scene of the accident where he talked with the defendant and then took his wife home. After she got home, Mrs. Bogus became upset and vomited for three or four days. She was nervous for about a week. She felt that being nauseated was a normal condition in connection with her pregnancy.

Mrs. Bogus was twenty years old at the time of the accident and was the mother of one child. In August before the accident on September 16, 1960, Mrs. Bogus was examined by her doctor and informed that she was pregnant. Mrs. Bogus was concerned about her pregnancy immediately after the accident but it went out of her mind completely when "nothing happened"

to her. Prior to a visit to Dr. Ira Gall, her obstetrician, on September 27, 1960, her morning sickness had stopped, but she was not disturbed because according to her own and her doctor's calculations it would have been normal for the nausea to. end. She was concerned because she had no sensation of soreness in her breasts. She told Dr. Gall that she did not feel pregnant and reported to him she had been in an automobile accident on September 16. She began "spotting" about October 8 or 9.

Dr. Gall further testified that he examined Mrs. Bogus on October 4 and found her uterus was not in a condition consistent with pregnancy but he did not tell her about it. On October 12 she visited Dr. Gall and complained of cramps along with spotting. The doctor prescribed medication for her on this visit and again on October 18. Dr. Gall suspected a troublesome pregnancy in the last two weeks in October. In late October a repeat pregnancy test was made and it was negative. On November 4 at Jewish Hospital, Dr. Gall performed a curettement on Mrs. Bogus. This is a procedure whereby the products of conception are removed from the lining of the uterus by scraping. The post-operative diagnosis of Mrs. Bogus' condition was a missed abortion which is unlike a regular miscarriage or abortion in that the products of conception are not passed with bleeding or hemorrhage, but instead the tissues and parts are absorbed by the body. Some mention of the trouble with the pregnancy may have been made to Mr. and Mrs. Bogus in October. The negative pregnancy test of Mrs. Bogus was made late in October, but Mr. and Mrs. Bogus had no knowledge of Dr. Gall's diagnosis until shortly before she went to the hospital.

William A. Griffen, a licensed attorney and an adjuster for Fireman's Fund Insurance Company, was assigned the Bogus file about September 22 and that day or the next he made a telephone call to the Bogus home. Mr. Bogus was not there but he talked to Mrs. Bogus. She testified that he asked her how she was feeling and she

said "fine", and asked him to call back and talk to her husband for further information which Mr. Griffen did on September 26. During this conversation, Mr. Bogus told him that Mrs. Bogus was pregnant, but she was not injured. Mr. Bogus did not have an estimate of the damage to his car but said he would obtain one and send it to Mr. Griffen. On October 18, Mr. Bogus telephoned Mr. Griffen to tell him he had the estimate. Mr. Griffen was not in and Mr. Bogus told the girl in the office that he would mail the estimate which he did. Thereafter Mr. Griffen prepared a release for $66.86, the amount of the estimate, and mailed it to Mr. and Mrs. Bogus who signed and returned it by mail. The release is undated and none of the witnesses were sure just when it was signed, but it would appear to have been after October 21 and before November 1, the date of the draft. Mr. Bogus testified that his wife's mother was the first person to suggest that there might be some connection between the accident and Mrs. Bogus' condition which they had been informed would require hospitalization. That is why he held onto the draft and called his lawyer. Counsel for the plaintiffs tendered a return of the draft and it was refused.

The defendant relies chiefly upon Vondera v. Chapman, 352 Mo. 1034, 180 S.W.2d 704, wherein the plaintiff sued for $25,000 and the defendants pleaded a release made nine days after the accident for a consideration of $175. The release by its terms covered injuries then known, as well as "any future injuries, losses and damages not now known or anticipated but which may later develop or be discovered". In her reply the plaintiff admitted execution of the release and alleged that at the time the release was executed the only injuries known were superficial and slight, but thereafter the plaintiff discovered serious and permanent injuries; that she would not have settled her claim if she had known of the additional injuries; that the settlement was the result of a mutual mistake by her and the defendants. A demurrer to her reply was sustained and on

appeal the judgment for the defendants was affirmed. This court held that since the parties dealt at arm's length in good faith the release precluded recovery for the unknown as well as the known injuries. The court also stated that it was the policy of the law to encourage freedom of contract and peaceful settlement of disputes, and a person under no disability and under no compulsion may convey his property or relinquish his rights for a consideration as small as he may decide.

The Vondera case was cited with approval in Kavadas v. St. Louis Southwestern Ry. Co., Mo.App., 263 S.W.2d 736, where plaintiff's judgment of $3700 for personal injuries was reversed because a release executed by him for a consideration of $12.18 was held not to be invalid on the ground of false representations. In much the same tenor as the reasoning in Vondera, the Kavadas opinion states, 263 S.W.2d 739–740: "There is some evidence in the record to indicate that plaintiff sustained substantial injuries and we must therefore confess that we are reluctant to hold that he is barred from recovery because he signed a release upon receipt of $12.18. However, this court cannot relieve the plaintiff of the consequences of his bargain without a valid legal reason for doing so. Mere inadequacy of consideration alone is not enough. Vondera v. Chapman, 352 Mo. 1034, 180 S.W.2d 704. To hold otherwise would establish a precedent which would make it difficult to settle controversies and would be contrary to the established policy of the law to encourage peaceful settlements." Vondera was also relied on in Croker v. Consolidated Service Car Company, Mo., 365 S.W.2d 524, 532, on the proposition that it was the policy of the law to encourage settlements for whatever sum the parties freely and fairly agree upon. On the ultimate facts, Vondera and the instant case have a great deal in common.

A mutual mistake regarding the existence of a fact which goes to the essence of a release will render the contract void-

able where it later appears that such fact did not exist, but a mutual mistake in prophecy or opinion may not be taken as a ground for rescission where such mistake becomes evident through the passage of time. Jennings v. Metropolitan Life Ins. Co., Mo. App., 166 S.W.2d 339, 344[2–3]; Oakley v. Duerbeck Company, Mo., 366 S.W.2d 430, 433[2]; 76 C.J.S. Release § 25, p. 645.

■ The cancellation of a release on the ground of a mistake is ordinarily granted only where the mistake is mutual, but it will be granted where the mistake of one party is either known to the other party or is so obvious that it must have been known to him and the mistake concerns a matter so vital that it could be said that the parties, because of miscalculation or false information, never actually agreed to the same proposition. Saline County v. Thorp, 337 Mo. 1140, 88 S.W.2d 183, 185[1]; Smith v. Githens, Mo.App., 271 S.W.2d 374, 379 [13].

■ Where execution of a release purporting to rest on a consideration is admitted, the plaintiff has the burden of proving the invalidity of the release. Conley v. Fuhrman, Mo., 355 S.W.2d 861, 864[2]; Foster v. Aetna Life Ins. Co., 352 Mo. 166, 176 S.W.2d 482, 485[5].

The plaintiffs urge that the rationale of Vondera v. Chapman is unclear as it applies to the case at bar, and if it is determinative the rule should be changed. We are cited to cases from other jurisdictions and exhorted to adopt a more liberal rule. The import of the cases cited is fairly summarized by this statement from an annotation entitled, "Avoidance of release of personal injury claims on ground of fraud or mistake as to the extent or nature of injuries", in 71 A.L.R.2d 82, 88–89: "A few courts, recognizing these difficulties, have said that cases of the type here considered are to some degree sui generis and, substantially abandoning any attempt to fit the situation within the classic limitations of the law of fraud or mistake, have held that the release may be set aside upon a show-

ing of an inequitable result unless it is established that it was 'fairly and knowingly made,' * * *." Since we have concluded that the evidence is insufficient to support a decree for the plaintiffs on any theory, we need not explore the merits or demerits of the Missouri law in this regard.

■■ As a part of their burden of proving the invalidity of the release, the plaintiffs must, among other things, show that the injuries alleged to have been discovered subsequently to executing the release were caused by the accident in question, that is, that there was a causal connection between the collision of automobiles and the loss of pregnancy and the resulting missed abortion. Cox v.Missouri-Kansas-Texas R. Co., 335 Mo. 1226, 76 S.W.2d 411, 415[4, 5]; Berry v. Kansas City Public Service Co., 341 Mo. 658, 108 S.W.2d 98, 106–107[11, 12]; Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, 646[2, 3]. The evidence tended to show that there was a post-operative diagnosis of a missed abortion but no testimony that it was caused by the accident. In Cox v. Missouri-Kansas-Texas R. Co., no causal connection was shown between an injury to plaintiff's hand and a subsequently developed cancer.

As the plaintiffs assert, issues of negligence, causation and the amount of damages are required to be determined in the trial of the personal injury action, but it does not follow that the plaintiffs do not have to relate the additional injury to the accident in the action to set aside the release. The court certainly cannot take judicial notice of a matter so unusual and inscrutable to a person without special training. Without such evidence, all related injuries are covered by the release. Dr. Gall testified as to his treatment and the curettement on November 4, but he was not asked and did not give his opinion as a medical expert that the missed abortion was caused by the accident, and there is no evidence in the case from which an inference of that fact can be properly drawn.

Since there is no proof that the missed abortion was caused by the accident, plaintiffs' claim fails and the release cannot be set aside. Wolf v. St. Louis Public Service Co., Mo.App., 357 S.W.2d 950; Housden v. Berns, 241 Mo.App. 1163, 273 S.W.2d 794; Poe v. Illinois Cent. R. Co., 339 Mo. 1025, 99 S.W.2d 82; General Refractories Co. v. Sebek, 328 Mo. 1143, 44 S.W.2d 60; Farmer v. Arnold, Mo., 371 S.W.2d 265.

The judgment is reversed.

All of the Judges concur.