Vivian Y. SOSA, Appellant,

v.

VELVET DAIRY STORES, INC., a Corporation, and Cletus F. Steffes, Respondents.

No. 24282.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1966.

Jack Z. Krigel, Cleary & Krigel, Kansas City, for appellant.

Russell D. Jacobson, Max W. Foust, Kansas City, for respondents.

DOUGLAS W. GREENE, Special Judge.

This case had its origin in a collision between automobiles driven by Vivian Y. Sosa and Cletus Steffes, which occurred on March 1, 1962, in Jackson County, Missouri. Plaintiff, hereinafter called appellant, filed suit for damages against defend-

ants Steffes and Velvet Dairy Stores, hereinafter called respondents. The petition alleged negligence on the part of respondents and stated that appellant had received personal injuries as the result of the collision which consisted of bruises to her back, spine, and leg, and a lumbar disc and soft tissue injury. She asked for $15,000.00 damages.

Respondents answered. They denied negligence, pleaded contributory negligence on the part of appellant, and further pleaded that appellant and her husband Felix Sosa did sign and execute a release which released respondents from all liability for the collision in question; that the consideration for said release was $239.03, which amount was tendered to appellant and her husband, and that the release was in full accord and satisfaction of any claim appellant may have had against respondents as a result of the collision and was an absolute bar to appellant's cause of action.

Appellant's reply admitted the execution of the release by appellant and her husband. It further stated that appellant and her husband did not know she had received any personal injuries as a result of the collision when she signed the release, and that appellant and respondents were mutually mistaken as to whether any personal injuries had been sustained by plaintiff; that she had rescinded and withdrawn the release before she was tendered the $239.03 in question; that the amount in question was grossly inadequate to cover personal injuries and property damage as it was in the exact amount of the automobile repair estimate, and that by reason of such mutual mistake and failure of consideration the release was invalid.

Respondents filed a motion for summary judgment which was overruled. Thereafter, at the time of trial, respondents refiled their motion for summary judgment and a hearing was held on said motion. Evidence was introduced, which included portions of appellant's deposition and various exhibits such as letters, releases, forms,

and affidavits, the pertinent portions of which are hereinafter set out. It was also stipulated for the purposes of the motion (incorrectly stated as appeal by respondents' counsel) that the issue of a causal connection between the injuries alleged by appellant and the accident in question would not be raised, but the right to contest such issue was reserved in the event the case was tried. Thereafter, the trial court sustained the motion for summary judgment. From such ruling, this appeal is taken.

The material facts before the trial court were as follows:

The collision occurred on March 1, 1962. At that time appellant was 43 years old and was married. She was not thrown into the windshield, and had no cuts, lacerations, or scratches. Later she noticed some bruises on her legs. Within twenty or thirty minutes after the accident she got in her car and drove to her place of employment at the Leawood Country Club where she worked her regular shift. She did not see a doctor. She told her husband about the accident. She also called her insurance agent, Herman Falke, and reported the accident. She talked to him again the next day and was told to get some estimates of her car damage. She obtained two estimates, one of which was from Southtown Motors in the sum of $239.03. She mailed the estimates to Mr. John Miller, at the suggestion of Mr. Falke, about one week after the accident. Mr. Miller was a claims adjuster for her liability and collision carrier, the Vanguard Insurance Company.

Appellant testified in her deposition that she didn't realize that she had sustained any injuries from the accident until about April 9, 1962. However, she also testified that within a week or two after the accident she began to feel bad. Her entire lower back was hurting and so was her right leg. She had pain when she walked; she limped and took aspirin and anacin. Her leg and back hurt at night and interfered with her sleep. All of this took place within the first two weeks after the accident.

When asked if she intended to make a claim against Mr. Steffe's insurance company so she wouldn't have to pay her fifty dollar deductible on her collision policy she said, "the fifty dollar deductible never entered my mind because I knew he had hit me and he had liability." Appellant did not contact respondents' insurer. It appears that Mr. Falke or Mr. Miller did, as she received from respondents' carrier an accident report form which came by mail. She filled out the form herself, signed it, and filled in the date, March 11, 1962. She mailed the report back either to respondents' insurer or to Mr. Miller. She couldn't recall whether or not she enclosed any car estimates.

The report gave a description of the accident which was caused by a skid on an icy street by an automobile driven by respondent Steffes. Plaintiff was out in the center of the street on a hill. She pulled over towards the curb and stopped. Steffes, who was going about fifteen miles per hour, tried to slow down or stop, but his car skidded and struck the car of appellant. The report stated the damage to her car was in the sum of $239.03. In answer to a question in the report "was anyone injured?" appellant wrote "no". Shortly thereafter she received a release from respondents' insurer. It came through the mail to her home. Appellant had the release for two or three days before she signed it. On March 30th, appellant and her husband signed the release. A Mrs. Hunt also signed it as a witness. Appellant could read and proved it by reading the release in full when her deposition was taken. The release provided that in consideration of $239.09, appellant and her husband released respondents from all claims, demands and causes of action for all property damage and personal injury, known or unknown that appellant suffered as a result of the collision in question. It further declared that any injuries sustained in the collision by appellant might be permanent and progressive and that recovery therefrom was uncertain and indefinite, and that in making the settlement appellant was relying on her own judgment as to the nature and extent of her injuries. It further stated that the release was given and accepted pursuant to compromise of a doubtful and disputed claim, liability for which was expressly denied. It concluded by stating that the release was the entire agreement between the parties, and was contractual and not a mere recital. It stated that appellant had carefully read the release, understood its contents, and signed the same as her own free act and deed. Directly over appellant's signature appears in bold type the words "Caution! Read Before Signing."

Appellant mailed the executed release to Mr. Miller, who mailed it to respondents' liability carrier with a covering letter. The letter requested that the company forward their draft made payable to appellant and her husband to him, and he would forward it on to appellant. This letter was dated April 4, 1962.

Respondents' insurer then issued their draft dated April 10, 1962, made payable to appellant and her husband in the sum of $239.03. The face of the draft stated it was in full satisfaction of all claims against respondents as a result of the accident in question. The draft was delivered to her at the hospital by someone. She didn't remember who or when. It had been mailed to her home.

The record is hazy as to when she went to the hospital. It was sometime between April 7th and April 9th. There is nothing in the record to show what she was in the hospital for. On April 10, the same day the draft was mailed to appellant, but one day before she received it, Mr. Miller wrote respondents' insurer advising them that the settlement draft had not been received and the releases were withdrawn. The letter stated that the releases were for property damage only, and that Miller was now informed Mrs. Sosa had suffered personal injury. Miller asked for a return of the release. She employed an attorney

on April 11th. She didn't remember whether she gave him the draft, mailed it to him, or her huband gave it to him. Her reply admits the draft was tendered to her on April 11th. Her attorney mailed the draft back to respondents' liability carrier on April 19, 1962. The draft was not endorsed. The attorney requested the release be returned and stated that the release only covered property damage and not the personal injuries of appellant. Appellant also stated in her deposition that she thought the $239.03 was for fixing her car, and that was all she wanted at the time she signed the release. No one discussed the release with her, or the accident report prior to the time she signed them. When she was asked on her deposition if she read the release, she stated, "I just read the part where it says my car was going to be fixed. I was getting the exact amount that the Southtown Motors had given me the estimate for and that is as far as I went." She further said she did not know that the release was a release of all claims, but only of property damage.

Plaintiff had a limited education but was under no disabilities. She could read and write, filled in the accident report in which she gave a narrative description of the accident and drew a diagram, read the release in full at the time of her deposition, which contained many legal terms, obtained her own estimates of damage to her car, and knew the difference between liability and fifty dollar deductible collision insurance. She was never examined by any doctor prior to her execution of the release. She never saw, or talked to, any agent of respondents. All of her contacts with them were by mail, and usually through the claims adjuster for her own company. There is no claim that anyone induced her to sign the release, or that anyone misrepresented anything to her as to her physical condition. No one told her the release was only for property damage. The first knowledge respondents had from any source that appellant was claiming personal injuries as to the result of the accident, and was

claiming that the release was only for property damage, was on the receipt of Mr. Miller's letter so advising them which was dated April 10, 1962.

 Appellant alleges three errors on the part of the trial court in sustaining respondents' motion for summary judgment. The first allegation of error is that there were genuine issues of material fact between the parties, and that therefore respondents were not entitled to summary judgment. It is true that a summary judgment can only be rendered if the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that a party is entitled to a judgment as a matter of law. Sup.Ct.Rule 74.04(c), V.A.M.R. It is claimed by appellant that the question of whether her alleged injuries were caused by the accident was a material fact in issue. Such is not the case. Respondents admitted, for the purpose of the hearing on the motion, the issue of causation. Appellant so concedes in her own brief. If the release was valid, causation is immaterial. We therefore rule this point against appellant.

Appellant's second allegation of error is that there was a total failure of consideration for the release, as tender of the stated consideration of $239.03 was made seven days after the release was returned by appellant to respondents' insurance carrier. She contends that she "withdrew" the release by letter of her agent, John Miller, to respondents' carrier, which letter was dated April 10, 1962. There is no evidence that respondents' agent received the letter before appellant received the draft on April 11, 1962.

The evidence is not disputed that she received the release through the mail; that she kept it several days, and then signed it and sent it back to respondents, to whom it was transmitted by her agent Mr. Miller in his letter of April 4, 1962. Miller asked that the draft be sent to him and that he would forward it to appellant.

There is no evidence that this procedure was followed, but at any rate, the letter containing the draft came to her home, after she had entered the hospital, and was delivered to her in the hospital on April 11, 1962. After she received the draft her attorney, who she had employed on April 11, 1962, mailed it back to respondents. In his letter no objection was made as to the form of the tender. His only contention was that the release was only intended to cover property damages and not personal injuries to Mrs. Sosa.

There is no Missouri case directly in point on this issue. A somewhat similar factual situation was present in Bogus v. Birenbaum, Mo.Sup., 375 S.W.2d 156. In Bogus, plaintiff was involved in an automobile accident on September 16, 1960. She was pregnant at the time and was thrown against the steering wheel. She felt a pain in her chest and stomach. After she got home she was upset and vomited for several days. Defendant's liability carrier called plaintiff the day after the accident, asked her how she was feeling and she said "fine". The adjuster talked to her husband the next day and was told the wife was not injured. Mr. Bogus obtained an estimate of his car damage of $66.86 and mailed it to the adjuster, who prepared a release in that amount and mailed the release to plaintiff. The release was undated but was signed between October 21st and November 1st. On November 1st a draft in the amount of $66.86 was mailed to plaintiff. It was received by her, but not cashed, and was sent back to defendant's carrier, as plaintiff was having more trouble with her pregnancy. It was established later that she had suffered a miscarriage. The release was held valid on a suit to set it aside, but on the grounds that no causal connection was proved between the accident and plaintiff's injuries. Courts in other jurisdictions have had occasion to deal directly with the problem. In Hofland v. Gustafson, 132 Cal.App.2d Supp. 907, 282 P.2d 1039, plaintiff signed and delivered a release to defendant's carrier on June 16, 1953, which recited it was in consideration of $420.00. It was a general release. Before the draft, which was dated June 24th, was received from the insurance company, plaintiff's attorney had on June 18, 1953, sent a notice of rescission to the insurance company. Failure of consideration among other things, was alleged in the letter, the only evidence of which was the eight days which elapsed between the signing of the release and the receipt of the check by plaintiff. The check was returned to defendant on July 2nd by plaintiff.

The court upheld the release. In a well reasoned opinion, the court stated that the presentation of the release to plaintiff for her signature was an offer on the part of defendant and was accepted as such by plaintiff when she signed it and delivered it to defendant, which then created an obligation on defendant to pay the consideration stated. The court further stated that since time was not of the essence of the contract, payment within a reasonable time was sufficient, and that the receipt of the draft by plaintiff only eight days after she gave a release was payment within a reasonable time. The rule announced in Hofland was followed and approved in Johnson v. Norfolk, 76 So.Dak. 565, 82 N.W.2d 656.

■ Further, under Missouri law where an agreement to accept a stipulated amount in satisfaction of a judgment or claim fixed no time for payment, it has been held that payment, or a tender of payment, within a reasonable time is sufficient and will be a bar to a claim of failure of consideration. Kahn v. Brunswick-Balke-Collender Co., Mo.App., 156 S.W.2d 40; Evans v. Evans, Mo.App., 28 S.W.2d 416. Also see Landau v. St. Louis Public Service Co., Mo.App., 267 S.W.2d 364, and Fair Mercantile Co. v. Union-May-Stern Co., 359 Mo. 385, 221 S.W.2d 751.

■ We therefore hold that a delay of seven days between the time appellant forwarded the release to respondents, and

the time that she received the draft was not an unreasonable delay and does not justify appellant's claim of failure of consideration. We therefore rule this point against appellant.

The third and last allegation of error by appellant is the claim that both appellant and respondent believed that appellant suffered no personal injuries as a result of the collision; that respondent had secured an accident report from appellant in which report she told them she had received no personal injuries, and that this was the only information respondents had in regard to her physical condition. Appellant argues that therefore the question of mutual mistake of fact should have been submitted to a jury. In support thereof, appellant cites Goodman v. Missouri Pacific Railroad Company, Mo.Sup., 312 S.W.2d 42. Goodman was an action brought under the Federal Employers Liability Act, 45 U.S.C.A. § 51 et seq. Plaintiff there was injured on July 9, 1954, when a 305 pound piston assembly fell on his back. He was hospitalized on Friday and returned to work the following Tuesday. He went back to the hospital twice for treatment. On July 21, 1954, he signed a release for 15.00, which was part of one day's pay. Plaintiff's physician, a Dr. Castles', told him he would be all right. Defendant's claim agent Calvert told plaintiff $15.00 was all he could pay him and asked him to sign the release, which he did. Calvert had Dr. Castle's report which said plaintiff had no permanent injuries. Plaintiff didn't tell the claim agent at the time he signed the release that he was still having trouble with his back and knee, as the doctor had told him he would be all right. It was later found that plaintiff had serious injuries caused by the accident.

The court held that under those facts, the trial judge was justified in submitting the issue of mutual mistake to a jury. In Goodman, as well as in Prince v. Kansas City Southern Ry. Co., 360 Mo. 580, 229 S.W.2d 568, and Cleghorn v. Terminal Railroad Ass'n. of St. Louis, Mo.Sup., 289 S.W.2d 13, there were present the elements of reliance by claimant on statements made by defendant's claim agents, or doctors, or both, to the effect that claimant had no permanent injuries. This is not the case here.

In Vondera v. Chapman, 352 Mo. 1034, 180 S.W.2d 704, plaintiff sued defendant for $25,000.00 for injuries allegedly received in an automobile collision. Defendant answered and pleaded a release executed by plaintiff nine days after the collision in which case plaintiff acknowledged the receipt of $175.00 in full settlement for all injuries, known or unknown, present or that might thereafter develop. Plaintiff, by reply, acknowledged execution of the release, but said that when it was executed her only known injuries were superficial and slight, and that after she signed the release she discovered additional injuries of which neither she nor defendant were aware when the release was signed, and that therefore the release should be held invalid because of mutual mistake. A motion to dismiss was sustained. On appeal, the court held that plaintiff made no charge of fraud or unfair dealing; that the time that elapsed between the accident and the release (9 days) would ordinarily be deemed sufficient to enable plaintiff to determine the extent of her injuries, and that she was not induced to settle on the assurances of a physician, a trained claim agent, or defendant.

The court further stated plaintiff had a better opportunity to know her condition than defendant, and that since the parties dealt at arms length and in good faith, and as the release covered unknown injuries that might later develop or become known, the release would be upheld. The court recognized that a taint of fraud or unfairness coupled with a grossly inadequate consideration would justify the invalidating of a release, but said that it knew of no case, where a voluntary contract, fairly made, had been

voided merely for inadequacy of consideration. Vondera is cited as the controlling authority in Benton v. Smith, Mo.App., 389 S.W.2d 392, a 1965 decision by this court.

The facts in Vondera are very similar to those in this appeal. Here appellant knew she was hurt. She noticed trouble with her back and leg within a week or two after the accident. She took aspirin or anacin for the pain. The pain kept her awake, and she limped when she walked. However, respondents had no knowledge of this. There is not a shred of evidence that they had any knowledge of her condition other than her statement in an accident report that was mailed to them by her in which she said no personal injuries resulted to anyone as the result of the accident.

■ These facts do not show a mutual mistake of a present existing fact. The mistake, if any, was unilateral, and made by appellant. Under the facts here, appellant's faulty opinion as to her own injuries and their severity does not render the release invalid. Vondera v. Chapman, supra; Randolph v. Ottenstein, D.C., 238 F.Supp. 1011. Appellant also contends that the release should be held invalid because she believed that it covered only her property damage and not personal injuries. However, there is no evidence that such mistake, if any, was mutual. The release, which was mailed to appellant, stated that it covered personal injuries, present and future, as well as property damage. Appellant, her husband, and a witness, who was a friend of appellants, all signed the release. Immediately above the signatures appear the printed words "Caution! Read Before Signing." Appellant could read, and did read the release in full when her deposition was taken. The release further contains the statement that the undersigned (appellant) had carefully read the release before signing. She does not claim that she is incompetent or illiterate. Such being so, she is presumed to know the mean-

ing of the English language, and the import of the release that she signed. Brennecke v. Ganahl Lumber Co., 329 Mo. 341, 44 S.W.2d 627, 630. While the law affords everyone reasonable protection against fraud, it does not go to the romantic length of establishing the relation of guardian and ward between the courts and adults who are in full possession of their faculties and capable of managing their own affairs, and to indemnify them from the consequences of their own actions which they later regret. Poe v. Illinois Central Railroad, 339 Mo. 1025, 99 S.W.2d 82; Judd v. Walker, 215 Mo. 312, 114 S.W. 979.

The fact that the consideration was in the exact amount of one of appellant's repair estimates ($239.03) is neither novel or material. In Bogus v. Birenbaum, supra, the release was for $66.86 (the estimated costs of repair of the automobile). See also Polley v. Atlantic Refining Co., 417 Pa. 549, 207 A.2d 900.

In Kavadas v. St. Louis Southwestern Ry. Co., Mo.App., 263 S.W.2d 736, the consideration was $12.18 (one day's pay). Kavadas, in an effort to set aside the release said that he thought it was a receipt for one day's pay. The draft with which he was paid had typed across its face the notation that it was in full satisfaction for all claims for injuries sustained in the accident. In Oakley v. Duerbeck Co., Mo.Sup., 366 S.W.2d 430, Claimant signed a release for the consideration of $1700.00 (the amount of his hospital expenses). He later, in a suit to set aside the release, claimed among other things he thought it was only to cover doctor bills.

■ In all of these cases the releases were upheld. In Oakley, the legal procedure was through summary judgment, as is the case here. We are of the opinion that appellant should be bound by her own bargain. If releases were to be easily set aside and settlements ignored, chaos would result. Defendants and their insur-

ance carriers would be discouraged from settling claims and taking releases for personal injuries and would resort to the courts for a determination. This would be costly, time consuming, and burdensome on the parties involved, their attorneys, and the courts. The law favors settlements fairly made. Randolph v. Ottenstein, supra.

As we find no evidence in the record to justify a finding of mutual mistake and no evidence of fraud or unfairness coupled with a grossly inadequate consideration, we hold that there were no genuine issues of material fact to submit to a jury but only questions of law which, in our opinion, were correctly resolved by the trial court by its action in sustaining respondents' motion for summary judgment. The judgment of the trial court is affirmed.

CROSS, P. J., and HOWARD, J., concur.

BLAIR, J., not participating.